FLORENCE HARRELL, A WIDOW, v. H. EMMETT POWELL AND WIFE, MILDRED F. POWELL; WAYNE RE-DEVELOPMENT COMPANY, INCORPORATED, AND N. E. MOHN, JR.

(Filed 10 December, 1958.)

**1. Vendor and Purchaser § 4—**

Ordinarily, in the absence of inquiry by the vendors, the purchaser is not under duty to disclose facts materially affecting the value of the property when no fiduciary relationship exists between them, certainly when such facts are a matter of public record, and the purchaser does not, by word or deed, divert full investigation by vendors.

**2. Cancellation and Rescission of Instruments § 2— Allegations held insufficient predicate for action to rescind instrument for fraud.**

Allegations to the effect that an official of a housing authority which managed property under lease to the Federal Government had knowledge of proposed legislation which would materially affect the value

of the property (Federal Housing Act of 1950) and with such knowledge obtained an option from the owners of the fee, without disclosing the fact of the pendency of such legislation, *is held* insufficient to state a cause of action to set aside the option and deeds pursuant thereto on the ground of fraud in the absence of allegations sufficient to show any fiduciary relationship existing between the parties or any action by the purchaser diverting vendors from making full inquiry, or that vendors made any inquiry of the purchaser and that he denied the facts or remained silent in regard thereto in the face of such inquiry.

**3. Fiduciaries—**

While a public official occupies a fiduciary relationship to the governmental agency or unit which he serves, it does not follow that he occupies a fiduciary relationship to a private citizen from whom he, as an individual, purchases property, and therefore he is not under duty to disclose to the vendor the pendency or passage of legislation affecting the value of the property when the facts in regard thereto are of public record.

**4. Appeal and Error §§ 7, 1a—**

*Certiorari* granted under Rule 4(a) brings to the Supreme Court for immediate review only the petitioner's exceptions to the rulings made by the court below and is insufficient basis for a demurrer *ore tenus* in the Supreme Court.

PARKER, J., not sitting.

On writ of *certiorari,* granted on petition of plaintiff, to review order of *Parker, J.,* entered June 10, 1958, in WAYNE Superior Court.

Civil action instituted March 19, 1958, to set aside certain conveyances relating to a tract of land in Goldsboro Township, Wayne County, containing approximately 93.25 acres and to recover rents and profits.

Judge Parker's order, now reviewed, allowed defendants' motion to strike designated portions of paragraph 8 and all of paragraphs 9-17, both inclusive, of the complaint.

Unchallenged portions of the complaint, summarized, alleged these facts:

Plaintiff and L. J. Harrell, her husband, who then owned the land as tenants by entirety, executed two paper writings, both recorded in the Wayne County Registry, (1) one dated December 21, 1949, to H. Emmett Powell (hereinafter called Powell), purporting to be an option and contract to convey, and (2) the other dated September 7, 1950, to Wayne Re-Development Company, Incorporated, (hereinafter called Re-Development Company), assignee of Powell, purporting to be a deed.

Powell caused the Re-Development Company to execute two conveyances, both recorded in said registry, (1) a deed of trust dated December 18, 1956, securing (undescribed) notes payable to Powell

and N. E. Mohn, Jr., (hereinafter called Mohn), and (2) a deed dated December 20, 1956, made subject to said deed of trust, purporting to convey an undivided interest of 89% to Powell and an undivided interest of 5% to Mohn and the remaining undivided interest of 6% to five (unnamed) individuals.

Defendants, since 1950, have collected, and they are now collecting, substantial rentals for said land.

Plaintiff's husband, L. J. Harrell, died in January, 1955.

At the time of the execution, acknowledgment and delivery of the purported contract to convey (1949) and the purported deed (1950), L. J. Harrell did not have mental capacity sufficient to execute a valid contract or deed or to give his assent to the execution of a valid contract or deed by plaintiff; and, on account of said mental incapacity of L. J. Harrell, the said contract and deed are void.

The stricken portions of the complaint comprise some six pages of the printed record. A summary of these extended allegations is set forth below.

In 1943, the federal government, by condemnation proceedings, acquired a leasehold interest in said land. It caused to be erected thereon about ninety (90) multiple dwelling units for rental to personnel stationed at or connected with Seymour Johnson Field, a temporary U. S. Army Air Force installation.

The federal government, by its leasehold interest, acquired the exclusive possession and use of said land "for a period of one year with the right to renew from year to year for the term of the War Emergency, as determined by the President, and for three years thereafter, and with the right to remove at the termination of such use all improvements constructed or placed thereon by the Government or any of its agencies."

The Eastern Carolina Regional Housing Authority (hereinafter called the Authority), organized under the North Carolina "Housing Authority Law," under contract with an appropriate federal agency, managed and rented said dwelling units during the World War II emergency and thereafter until the present time.

Powell was Executive Director of the Authority from its organization in 1941 until March, 1958. During this period, Mohn was an employee of the Authority and is now Acting Director thereof. Powell exercised a dominant influence and control over the business, operations and policy of the Authority, and over Mohn, until March, 1958.

Both Powell and Mohn were "fully advised of Federal and State legislation and trends relating to temporary war-time housing and Housing Authorities," particularly the housing facilities erected on said land; and they were "well informed of Federal legislation pro-

posed in the First Session of the 81st Congress of the United States, and . . . knew that the proposed legislation would permit the relinquishment of buildings of a masonry type, such as the buildings on the land in question, which had been erected by Federal Government Agencies on plaintiff's and her husband's land, then in possession of the Government, under condemnation for use and occupancy, . . ."

In August, 1949, Powell well knew "that a Committee of the Congress had made a favorable report to the Congress and had recommended the enactment of pertinent amendments to the Federal Housing Act under which the Administrator could make disposal of the housing projects, similar to the one . . . described herein, to the owner of the land without monetary consideration"; and Powell knew "that such disposal could and would increase the value of the land underlying the housing project by many hundred per cent . . ."

The Housing Act of 1950, proposed in the First Session of the 81st Congress, was enacted on April 20, 1950, in the Second Session thereof; and shortly thereafter, to wit, in July, 1950, Powell caused to be organized the said Re-Development Company, causing 89% of its capital stock to be issued to Powell and 5% thereof to Mohn.

On January 24, 1950, after the said favorable committee report, Powell procured from plaintiff and L. J. Harrell, for a nominal consideration, the purported option and contract dated December 21, 1949; and on September 7, 1950, after the enactment of the Housing Act of 1950, Powell procured from plaintiff and L. J. Harrell, for the grossly inadequate consideration of $27,397.00, the purported deed to said Re-Development Company.

The condemnation judgment provided for the payment to plaintiff and L. J. Harrell of an annual rental of $269.00; but the Housing Act of 1950 "provided a method of obtaining a much larger rental for said land."

Powell, when dealing with plaintiff and L. J. Harrell, "was occupying a public position of trust," to wit, Executive Director of said Authority, and knew that plaintiff and L. J. Harrell, "by reason of his official position, trusted him and had confidence in him." It was his duty, under the circumstances, "to inform the owners, at the time of his negotiations to buy the land, of the change in the status of the property and the impending relinquishment of the interest of the Government therein to the owner of the fee in the land. His failure to disclose these facts, his silence in relation thereto, and his concealment of the facts from the owners of the land, his purpose to procure the land as a part of his scheme to enrich himself, constituted a fraud on the plaintiff and her late husband and induced and caused the purported conveyance of their land to the Agency of the defendants

Powell and Mohn for an unfair, unreasonable and grossly inadequate consideration, when such conveyance would not and could not have been procured for such consideration had the defendant Powell not remained silent concerning the facts then existing, and the changing status of plaintiff's property then known to him but, to his knowledge, unknown to the plaintiff and her husband."

Wherefore, plaintiff prayed judgment.

*Dees & Dees, George N. Vann and Lucas, Rand & Rose for plaintiff.*
*Hubbard & Jones, McLendon, Brim, Holderness & Brooks and Hubert Humphrey for defendants.*

BOBBITT, J. We do not consider the clause and sentence stricken from paragraph 8. Plaintiff's petition, filed under Rule 4(a), 242 N.C. 766, on which *certiorari* was granted, related only to paragraphs 9-17, both inclusive.

Plaintiff's only exception and assignment of error is to the entire order of Judge Parker.

The questions presented in plaintiff's brief relate to whether paragraphs 9-17, both inclusive, considered as a whole, allege facts sufficient to constitute a cause of action for fraud. Whether any of the stricken allegations include facts germane to an action to set aside the contract and deed on the ground of the alleged mental incapacity of L. J. Harrell is not presented or considered.

An analysis of the long and complicated federal statute cited as the "Housing Act of 1950," 64 Stat. (Part I) 48 *et seq.*, is unnecessary. We assume, for present purposes, that the proposal and enactment of the federal legislation materially affected *the market value* of the land underlying the housing project.

Bills introduced, committee reports thereon and legislation enacted in the Congress, are public records, available for inspection by any interested person. The Harrells, through counsel or otherwise, could have obtained full and accurate information concerning the proposed and enacted legislation.

However, plaintiff alleged that the Harrells *in fact* had no knowledge or information concerning the proposed or enacted legislation; that, if they had had such knowledge or information, they would not have sold and conveyed their property for $27,397.00; and that Powell, having such knowledge, in his dealings with the Harrells, undertook ("schemed") to purchase and did purchase the property at a price substantially less than its fair market value.

It is *not alleged* that Powell (or any defendant) made a false representation to the Harrells or by word or deed diverted them from full inquiry or investigation concerning any matter pertinent to the market

value of their property. The gravamen of the alleged fraud is Powell's silence, that is, his failure, on his own initiative, to advise the Harrells as to such matters. Plaintiff alleged that it was his *legal duty* to do so.

In the Annotation, "Duty of purchaser of real property to disclose to the vendor facts or prospects affecting the value of the property," 56 A.L.R. 429, the annotator, citing decisions, states the rule as follows: "In the absence of any fiduciary relationship between the parties, the prospective purchaser of land is under no legal obligation to disclose to the vendor facts, much less prospects, within his knowledge, which materially affect the value of the property, where the vendor does not specifically question him in reference thereto, . . ." In accord: 55 Am. Jur., Vendor and Purchaser Sec. 87; 91 C.J.S., Vendor and Purchaser Sec. 57.

In *Smith v. Beatty,* 37 N.C. 456, *Daniel, J.,* for this Court, marked the distinction in these words: "A vendee, who knows that there is a gold mine on the land, is not compelled to disclose that fact to the vendor. But if he is interrogated as to his knowledge of such a thing, and he then denies any knowledge of the mine, this denial will make the transaction fraudulent."

Suffice to say, it is not alleged that the Harrells addressed any question to Powell (or any defendant) or that Powell (or any defendant) made any statement to the Harrells relevant to the market value of the Harrell property.

Plaintiff's position is that Powell's relationship to the Harrells was that of a fiduciary or quasi-fiduciary. The asserted basis for this position is that the Harrells "trusted him and had confidence in him," because Powell "was occupying a public position of trust," to wit, Executive Director of said Authority.

If a fiduciary relationship existed, plaintiff would have sound ground for her further contention that it was Powell's legal duty to affirmatively disclose all relevant facts concerning the market value of the Harrell property; but, in our opinion, the facts alleged do not establish a fiduciary relationship between Powell and the Harrells. The facts alleged by plaintiff are quite different from the factual situations considered by this Court in *Abbitt v. Gregory,* 201 N.C. 577, 160 S.E. 896, and *Speight v. Trust Co.,* 209 N.C. 563, 183 S.E. 734, cited by plaintiff. Here, under the facts alleged, the only relationship between the Harrells and Powell was that of vendor and purchaser.

Admittedly, as asserted by plaintiff, public office is a public trust. But it should be noted that *Insulation Co. v. Davidson County,* 243 N.C. 252, 90 S.E. 2d 496, and *S. v. Williams,* 153 N.C. 595, 68 S.E. 900, cited by plaintiff, involved, respectively, (1) the relationship of

a person who was chairman of its board of commissioners *to David-son County, and* (2) the relationship of a person who was a member of its board of aldermen *to the City of New Bern.*

We are concerned only with the relationship of Powell to the Harrells, not with the relationship of Powell to said Authority. The facts alleged are that Powell, in his transactions with the Harrells, was acting solely as an individual. Unquestionably, a public official occupies a fiduciary relationship to the governmental unit or agency which he serves; but it does not follow therefrom that his relationship to a private citizen from whom he, as an individual, purchases property, is that of a fiduciary.

Having reached the conclusion that paragraphs 9-17, both inclusive, considered as a whole, do not allege facts sufficient to constitute a cause of action to set aside said conveyances on the ground of fraud, the order of *Judge Parker* is affirmed.

By demurrer *ore tenus* (filed) in this Court, defendants assert that the complaint fails to state facts sufficient to constitute a cause of action and that the facts alleged show that plaintiff's right to bring this action "is barred by laches and otherwise." Suffice to say, *certiorari* granted under Rule 4(a) brings to this Court for immediate review only the petitioner's exceptions to rulings made by the court below.

Affirmed.

PARKER, J., not sitting.