BEATRICE E. JOHNSON v. DOROTHY J. OWENS.

(Filed 24 February, 1965.)

**1. Fraud § 1—**

The elements of fraud are a definite, material misrepresentation which is made with knowledge of its falsity or in culpable ignorance of its truth, and with the intent to deceive, and which is reasonably relied upon to the deception and damage of the other party.

**2. Same; Sales § 15—**

The remedy for fraud applies to contracts and sales of both real and personal property.

**3. Fraud § 5—**

Whether the party asserting fraud was entitled to rely upon the misrepresentation constituting the basis of his remedy must be determined upon the facts of each case under the general guidelines that a person who has made a bad bargain should not be allowed to disown the bargain by asserting a false representation upon which he did not in fact rely, while a person who knowingly makes a false representation in regard to a material matter, with intent that it should be relied upon, should not be allowed to escape liability on the ground that his deceit inspired confidence in a credulous person.

**4. Sales § 15—**

The maxim *caveat emptor* does not apply in cases of fraud.

**5. Fraud §§ 5, 11— Whether plaintiff reasonably relied upon misrepresentation held for jury under the evidence.**

Plaintiff's evidence was to the effect that as a prospective purchaser she inspected the house owned by defendant on three occasions, the first two in the absence of defendant, that the house was cold on all three occasions but that on the occasion when defendant was present there was a fire in the fireplace and defendant explained she did not heat the house in the daytime because of her absence at work, and that on that occasion when the thermostat was turned up the furnace fan responded. The evidence further tended to show that the fan worked because it was set on summer control, that defendant, in reply to a direct inquiry, stated that the heating system was in excellent working condition, while, as a matter of fact, the furnace and the oil tank had holes in them, were worn out, and were not worth repairing, and that soot around the registers was concealed by heavy furniture, and that after buying the house plaintiff had to have a new furnace installed. *Held:* Defendant's motion for nonsuit should have been denied, and the contention that the evidence disclosed as a matter of law that plaintiff's reliance upon the misrepresentation was not justified is untenable.

PARKER, J., concurs in result.

APPEAL by plaintiff from *Campbell, J.,* May 18, 1964 Schedule B Civil Session of MECKLENBURG. This appeal was docketed in the Supreme Court as Case No. 237 and argued at the Fall Term 1964.

Action to recover damages for fraud. At the close of plaintiff's evidence the trial judge entered a judgment of involuntary nonsuit. The evidence, taken in the light most favorable to plaintiff, is sufficient to establish these facts:

In February 1963 defendant's residence was for sale. About the middle of the month, and again a few days later, plaintiff, a registered nurse, in company with defendant's realtor, inspected the house in defendant's absence. On each of these occasions the house was cold. Plaintiff made an appointment with defendant to see her at the house on Sunday night, February 17, 1963. To help her decide whether she should buy defendant's house, plaintiff took Mr. R. L. Hogan with her. It was a cold night. When they arrived at the house, defendant and several guests were seated in the den, by the fireplace, in which there was a fire. Because the rest of the house was cold, plaintiff asked defendant very specifically about the heating system. Defendant told her that "the heating system was in excellent condition and in working order" and that "the heating unit was adequate and satisfactory to keep the house warm." Defendant explained that since she worked all day she did not turn up the heat until she came home in the afternoon. In response to an inquiry by Mr. Hogan as to whether the heating system was then working properly, defendant said that it was but that it was not turned on. He asked her permission to turn up the thermostat, and, when he did so, the fan came on. He felt air coming out of the duct by which he was standing. Defendant very soon, however, turned the thermostat down, and the fan went off. No warm air had come through. Mr. Hogan thought the thermostat was turned off before the air had had time to become warm. He later learned that the fan "was probably set on summer control; otherwise the fan would not have come on as soon as he turned the thermostat up."

Because of defendant's representations about it, plaintiff "did not get a furnace man to inspect the heating system." On February 28th plaintiff contracted to buy the house for $15,900.00. Defendant delivered the deed on March 20, 1963, and plaintiff went into possession on April 8, 1963. With all defendant's furniture out of the house, plaintiff was able to observe, for the first time, that the carpeting in the living room and the dining room was smoked and that the registers were filled with soot and dirt. Round each register was a 2-foot area black from soot. Previously there had been a large couch and a chair in front of the registers in the living room. This arrangement of furniture had concealed the blackened areas round the registers there, and

the register in the dining room was under a built-in bookcase. When, on April 8th, plaintiff attempted to turn on the furnace, "nothing happened." She then called in a heating expert, Mr. G. L. Rhodes, who discovered a hole in the body of the furnace itself and worn-out bearings in the fan. The flue passages were two-thirds clogged with soot, scale, and rust, "an accumulation of over two or three years at least." The furnace was "burned out," and "the life of it was gone." In Mr. Rhodes' opinion, the furnace could not have operated properly or satisfactorily during the winter either of 1962 or of 1963. Furthermore, he was certain that, even if the furnace had been in operating condition, it was too small to have heated the house. The oil tank had 50 or more holes in it. It contained 25-30 gallons of oil and 165-170 gallons of water. He discovered a copper tube running through the ventilator in the foundation of the house into the top of the oil tank. Such a tube is a "common emergency practice" to take oil from the top of a tank into which water is seeping. Neither the furnace nor the tank was worth repairing, and plaintiff was obliged to put in a new furnace. It cost plaintiff "approximately $1,000.00 to repair what was represented to be in good condition when (she) purchased the house." At the close of plaintiff's evidence Judge Campbell allowed defendant's motion to nonsuit her cause of action for fraud (first cause of action). The case went to the jury on a second cause of action, which is not involved here. From the judgment dismissing plaintiff's first cause of action, she appeals.

*Dockery, Ruff, Perry, Bond & Cobb for plaintiff.*
*Bradley, Gebhardt, Delaney and Millette for defendant.*

SHARP, J. The oft-stated essential elements of fraud, or deceit, are: " 'the representation, its falsity, *scienter*, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss' . . . The principle applies to contracts and sales of both real and personal property. . . ." *Berwer v. Insurance Co.*, 214 N.C. 554, 557, 200 S.E. 1, 3; *accord, Keith v. Wilder,* 241 N.C. 672, 86 S.E. 2d 444; *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131; *Harding v. Insurance Co.,* 218 N.C. 129, 10 S.E. 2d 599.

When we attribute to plaintiff's evidence the verity required by defendant's motion for nonsuit, it plainly is sufficient to establish that defendant made the positive and specific representation that the heating system was in excellent condition and adequate to heat the house. It is sufficient to establish, also, that the representation was false and that

defendant knew it to be so. Patently, the representation affected the value of the property, and defendant specifically intended that it should induce plaintiff to purchase the house. Plaintiff's evidence raises the inference that she was actually deceived by the misrepresentation and that she relied upon it to her damage. The only real question in the case is whether, under all the circumstances, plaintiff "reasonably relied" upon the representation.

Defendant argues that, even if her statements about the furnace were false, plaintiff had ample opportunity to inspect the house on two occasions in defendant's absence and to test the furnace herself, as well as to have it inspected by an expert; that, had she moved the furniture, she would have discovered the soot damage from the furnace; and that she should have been put on her guard by the chill in the house in February each time she entered it. In other words, defendant contends that plaintiff's own evidence affirmatively discloses that plaintiff acted unreasonably in relying upon her representations.

"The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest," *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E. 2d 881, 886 (a case in which the complaint was fatally defective). "The question is whether it is better to encourage negligence in the foolish or fraud in the deceitful." Annot., Fraud predicated upon vendor's misrepresentation of psysical condition of real property, 174 A.L.R. 1010, 1025. In *Machine Co. v. Bullock*, 161 N.C. 1, 9, 76 S.E. 634, 637; and *Cofield v. Griffin, supra* at 381, 78 S.E. 2d at 134 (both cases in which the court rejected such contentions by the defendant), it is said: "'We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud on the ground that his victim had faith in his word, and for that reason did not pursue inquiries which would have disclosed the falsehood.'" See Annot., Opportunity of buyer of personal property to ascertain facts as affecting claim of fraud on part of seller in misrepresenting property, 61 A.L.R. 492, 505-506 (doctrine of reasonable reliance in early North Carolina cases).

In *Cowart v. Honeycutt*, 257 N.C. 136, 142, 125 S.E. 2d 382, 387, a case in which the plaintiff contended that she was prevented from reading a release by the fraud of the defendant, Parker, J., speaking for this Court, said:

"Defendant in his brief admits that there was evidence of a false representation of a material fact which was relied upon by

plaintiff, but contends plaintiff as a matter of law was not justified in relying upon such representation, and her reliance was not reasonable. Such a contention is without merit. Our reply to such contention is this: 'In *Gray v. Jenkins*, 151 N.C. 80, 65 S.E. 644, this Court said: "The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract; that there must be a reliance on the integrity of man or else trade and commerce could not prosper." ' *Roberson v.. Williams*, 240 N.C. 696, 83 S.E. 2d 811."

Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine. This case presents that difficulty. In close cases, however, we think that a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, "You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you." Courts should be very loath to deny an actually defrauded plaintiff relief on this ground. When the circumstances are such that a plaintiff seeking relief from alleged fraud must have known the truth, the doctrine of reasonable reliance will prevent him from recovering for a misrepresentation which, if in point of fact made, did not deceive him. In such a case the doctrine is the specific remedy for a complainant who is, so to speak, malingering. A plaintiff who, aware, has made a bad bargain should not be allowed to disown it; no more should a fraudulent defendant be permitted to wriggle out on the theory that his deceit inspired confidence in a credulous plaintiff.

Plaintiff in this case, having reason to suspect the capacity of the furnace, inquired specifically of defendant about it. Defendant's reply, according to plaintiff's testimony, was so specific that it reassured her completely. Unfortunately, the reply was false. Although the parties were dealing at arm's length, "the maxim *caveat emptor* does not apply in cases of fraud," *Brooks v. Construction Co.*, 253 N.C. 214, 217, 116 S.E. 2d 454, 457. Plaintiff contends that she was fraudulently induced to forego an investigation of the furnace by defendant's artifice in covering the soot damage from the furnace with heavy pieces of furniture and in setting the fan on summer control. Upon each of plaintiff's three visits to the house defendant made it a point to explain that the furnace was not "on." When Mr. Hogan turned up the thermostat, the furnace appeared to respond, but it was only the fan. Of course, de-

fendant cut the thermostat off again almost immediately. Presumably, however, this did not arouse plaintiff's suspicions because she had not intended to remain in the house long enough for the furnace to heat it. Defendant's strategy succeeded, and plaintiff made no further investigation of the furnace.

Under all the circumstances, we cannot say, as a matter of law, that plaintiff, a registered nurse with no mechanical or engineering experience, did not reasonably and justifiably rely upon defendant's positive assurances that the furnace was in excellent condition. The two women were not on equal terms. Although plaintiff was looking over defendant's house as a prospective purchaser, defendant had been living in the house, and the manner in which the furnace performed, was, therefore, within her personal knowledge. When specifically asked about the furnace's performance, defendant was under both a legal and a moral obligation to disclose the facts and to answer the questions truthfully. *Harrell v. Powell,* 249 N.C. 244, 106 S.E. 2d 160; *Gray v. Edmonds,* 232 N.C. 681, 62 S.E. 2d 77.

In fairness to defendant, we point out that her evidence has not been heard. Whether she perpetrated the fraud which plaintiff has alleged and offered evidence tending to show, and, if she was fraudulent, whether plaintiff reasonably relied upon her representations, are questions of fact for the jury.

Reversed.

PARKER, J., concurs in result.