AMANDA J. EDWARDS, SHELBY LOU CLARK BURGESS, OTHA A. CLARK AND PAUL R. WATERS, AS EXECUTOR OF THE WILL OF LUCINDA JONES, DECEASED v. GLADYS J. GURKIN

No. 702SC557

(Filed 16 December 1970)

Fraud § 12— inducing mother to put money in joint account with defendant daughter — withdrawal of money by daughter — insufficiency of evidence of fraud

In this action to recover money withdrawn by defendant from the savings account of her mother, now deceased, on the ground that defendant, by fraudulent misrepresentations, induced her mother to withdraw $5,000 from a savings account in a bank and deposit it in a savings and loan association account in the name of her mother and herself with a survivorship provision, plaintiff's evidence was insufficient for submission of the issue of fraud to the jury, where it showed that defendant's mother was an intelligent woman of sound mind who possessed good common sense at the time of the transfer of the account and for some seven years thereafter, during which time deposits were made to and withdrawals were made from the account, and there was no evidence that defendant's mother did not acquiesce in the way the account was set up or that she did not know how it was set up.

APPEAL by plaintiffs from James, Judge, June 1970 Session, BEAUFORT County Superior Court.

This action was instituted by a daughter and two grandchildren of Lucinda Jones and the executor of her estate against another daughter of Lucinda Jones. The complaint alleged that defendant, through fradulent representations, had obtained funds

of Lucinda Jones and that Lucinda Jones was actually deceived by the representations. A copy of the will of Lucinda Jones is attached to the complaint and made a part thereof. By the will, Lucinda Jones bequeathed the sum of $800 to each of the grandchildren who are plaintiffs. After devises of real estate, the remainder of her estate is to be divided equally between the plaintiff Amanda J. Edwards and the defendant Gladys J. Gurkin. There is neither allegation nor evidence that the personal estate is insufficient to pay the specific bequests to the two grandchildren. The complaint includes a prayer for the recovery of $6085.01 representing funds wrongfully withdrawn by defendant from funds of Lucinda Jones in Beaufort County Savings & Loan Association and for an accounting of funds received by defendant for Lucinda Jones from 1963 to 1969 and recovery of such amounts as the accounting may show the estate of Lucinda Jones is entitled to receive from defendant.

At the close of plaintiffs' evidence, on motion of defendant, the action was dismissed.

*Carter and Ross, by L. H. Ross, for plaintiff appellants.*

*Wilkinson and Vosburgh, by John A. Wilkinson for defendant appellee.*

MORRIS, Judge.

Plaintiffs' evidence is substantially the following: Amanda J. Edwards, one of the plaintiffs and sister of the defendant, testified that her mother died in 1969 and was 81 years of age at the time of her death. She could not read anything but her name. Up until January 1962 her mother had had a savings account in the Wachovia Bank and Trust Company. She had $5000 on deposit at that time and defendant Gladys J. Gurkin had the right to make withdrawals therefrom. In 1962 that fund was withdrawn and placed in the Beaufort County Savings and Loan Association. Both the witness and her mother were present when the account was opened at the Savings and Loan. When asked what statement defendant made to her mother concerning the account, the witness, over objection, testified: "My sister told my mother that she could put it in the Beaufort County Savings & Loan—this building where we were in. That she could get more interest on the money and she could have it put in there, the same as it was in the bank. . . . That is the only statement she made. That it could be put in there,

Edwards v. Gurkin

the same as it was in the bank, so she could get it out in case she needed it, she was sick, or anything, she needed the money, then she could get it out, the same as the bank." The defendant and her husband lived with her mother until the defendant built a home for herself and then her mother moved in defendant's home. All those years the mother had an income of her own. She had a small tobacco allotment, soil bank payment and a social security check. Her health was pretty good. She took care of the house and most of the laundry and did all of the cooking except breakfast, but in 1968 and 1969 she didn't do much of anything.

On cross-examination, the witness testified that her mother's mental condition was good up until 1967. She was an intelligent woman. She had good common sense. Up until the last two years of her life she was pretty much alert and took an active interest in what went on around her. The mother went to live with defendant in 1956 and lived there until her death. During that time she paid the defendant $20 per month and filled the oil drum twice a year and paid the light bill twice a year. Before the mother began to lose her mental competency the last two years of her life she had some problems with her general health. When the bank account was changed her mother was of sound mind. "I didn't walk up to the counter where they made the transaction, but we stepped inside the door. She walked up to the counter, made the transaction, stepped back and told us she could put it in there and draw more interest and put it in the same way it was in the bank. That is what my sister told my mother and I. No, there was not any attempt to hide this transaction from me or any other member of the family, because mother asked me to go." She never inquired of her sister, the bank, or anyone else whether her own name could be added to the account. The mother had considerable medical expenses the last years of her life but she had an insurance policy and after she became 70 that was dropped and medicare took over. During the last "couple of years" of her mother's life she required special care and observation.

The managing officer of the Savings and Loan Association testified that the account was opened 25 January 1962 in the name of Lucinda C. Jones or Gladys J. Gurkin and that the account had a survivorship provision. On 7 October 1968, $5074.38 was withdrawn, and a penciled notation "To Account No. 2676" was made. Account No. 2676 is in the name of Mrs.

Gladys J. Gurkin or Louis M. Gurkin and on 7 October 1968, $5000 was deposited to that account. On 11 April 1969, $1010.62 was withdrawn and on 25 April 1969, $1010.63 was withdrawn, closing the account. The records do not indicate that those withdrawals were deposited in another account. The Savings and Loan Association had a signature card signed by Mrs. Lucinda Jones during the existence of the account.

The savings account passbook was introduced in evidence and it shows that no withdrawals were made for two years after the initial deposit of $5000. Two hundred dollars was deposited in 1962, $500 in 1963, and $800 in 1965. From 1964 to the date of the $5000 withdrawal in 1968, 14 withdrawals were made, 12 of which were in the identical amount of interest earned to that time. The record is silent as to by whom these deposits and withdrawals were made.

The defendant by her answer admitted withdrawing the $5000 on 7 October 1968, but averred that it was done to reimburse her for expenses she had paid and as a result of her mother's insistence over the years. She also admitted withdrawing $1010.63 but averred it was not for her own use but had been used to pay her mother's funeral expenses and the balance would be used, as far as it would go, to erect a suitable marker at her mother's grave.

The essential elements of fraud are clearly stated in *Johnson v. Owens*, 263 N.C. 754, 756, 140 S.E. 2d 311 (1965), as:

"the representation, its falsity, *scienter*, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss."

Taking the plaintiffs' evidence as true and in the light most favorable to them, it seems abundantly clear that it falls far short of being sufficient to submit the issue of fraud to the jury.

Plaintiffs' own evidence is that Lucinda Jones was an intelligent woman, of sound mind, and possessed of good common sense at the time of the transfer of the account and for some seven years thereafter, during which time deposits were made to and withdrawals from the account. There is no evidence that

---

Lucinda Jones did not acquiesce in the way the account was set up, nor is there any evidence that she did not know how it was set up. There is evidence that she signed a signature card. The record is silent as to when this was done. There is no evidence that the whole transaction was not fully explained to her.

We are in accord with the trial judge that the action should have been dismissed.

Affirmed.

Judges BROCK and VAUGHN concur.