ELDER NOAH McLAMB, ROY MORRIS AND LEVERNE STEPHENSON, TRUSTEES, ELDER B. H. INGLE, PRESIDENT, MARTHA CURRIN, CLERK, OFFICERS OF FIRST MISSIONARY CONFERENCE OF AMERICA, INC.; AND ELDER NOAH McLAMB, LEVERNE STEPHENSON, AND CHRISTINE McLAMB, TRUSTEES, ELDER NOAH McLAMB AND LEVERNE STEPHENSON, DEACONS, MRS. CALLIE PARKER, TREASURER, AND SHELBY JEAN STEPHENSON, CHURCH CLERK, OFFICERS OF THE LEE'S UNION MISSIONARY CHURCH AND LEVERNE STEPHENSON AND LEVERNE STEPHENSON GROUP AND OTHERS UNITED IN INTEREST CONSTITUTING THE TRUE CONGREGATION OF THE LEE'S UNION MISSIONARY CHURCH

— v. —

ASHLEY RAY McLAMB, W. EDGAR McLAMB AND J. E. WHEELER, PURPORTED TRUSTEES, W. EDGAR McLAMB AND THURMAN LEE, PURPORTED DEACONS, AND JOHN A. WHEELER, PURPORTED CHURCH CLERK, PURPORTED OFFICERS OF THE LEE'S UNION (MISSIONARY) CHURCH, AND JOHN A. WHEELER AND JOHN A. WHEELER FACTION PURPORTING TO BE THE CONGREGATION OF THE LEE'S UNION (MISSIONARY) CHURCH

No. 7311SC679

(Filed 24 October 1973)

Cancellation and Rescission of Instruments § 10; Fraud § 12— setting aside deed — fraud — constructive fraud — fiduciary relationship of church pastor

    In this action to set aside a deed conveying land to a church conference and to a local church, the evidence was sufficient for submission to the jury of an issue of direct fraud on the part of the president of the conference, who was also the pastor of the church, in inducing the grantors to sign the deed by falsely representing that he had had the deed drawn so that only the local church would own the property it conveyed; furthermore, there was sufficient evidence for submission of an issue of constructive fraud since the pastor occupied a fiduciary relationship toward the grantors, members of the church, and there is a presumption of fraud or undue influence on the part of the pastor.

APPEAL by plaintiffs from *Canaday, Judge,* at the 30 April 1973 Civil Session of JOHNSTON Superior Court.

The complaint in this action, filed 2 August 1968, alleges in pertinent part the following:

    Plaintiff Ingle (Ingle) is the president, plaintiff Currin is the clerk, and plaintiffs McLamb, Morris, and Stephenson are the trustees of plaintiff First Missionary Conference of America, Inc. (conference). Certain named plaintiffs are officers and

with others constitute the true congregation of Lee's Union Missionary Church (church). Certain of the defendants, including defendant Thurman Lee, purport to be trustees, deacons and other officials of the church. The conference consists of two churches, the Lee's Union Church in Johnston County and the First Missionary Church of Raleigh.

On 17 March 1953, defendant Thurman Lee (Mr. Lee) and his wife, Ada Lee (Mrs. Lee), executed a deed to Thurman Lee, Jeff Parker and David Wheeler, as trustees for the conference, and Thurman Lee, Atlas Blackman and Edgar McLamb, as trustees for the church, conveying a one-half acre tract of land in Johnston County, with proviso that said trustees would hold said land in trust for the use of the conference and church. On or about 12 March 1968, defendants notified the conference that the church no longer would be affiliated with the conference but would be an independent church. Defendants have notified officers of the conference that the conference could not use the church property and defendants would not allow the property to be used by any group which was not "in unity" with defendants. Plaintiffs asked that certain of them be declared officers and the true congregation of the church, that plaintiffs be awarded full ownership and possession of the church property and that defendants be restrained and enjoined from interfering with plaintiffs in the use and enjoyment of said property.

In their answer defendants denied the material allegations of the complaint. They further alleged that at the time of the execution of the deed for the church property, Ingle was the pastor of the church (in addition to being president of the conference) and enjoyed the respect and confidence of the members of the church, particularly Mr. and Mrs. Lee; that Mr. and Mrs. Lee agreed to give the land in question to the church upon assurance by Ingle that the deed would be prepared so as to vest title in the church; that Ingle had the deed prepared and by fraud and misrepresentation induced Mr. and Mrs. Lee to execute a deed which purports to convey the land to the conference and the church.

Pursuant to pretrial conferences, the parties stipulated: The issue of fraud would be the determinative issue in the trial of the case. If the issue of fraud were answered in favor of plaintiffs, plaintiffs would receive and be entitled to one-half of the real estate and one-half of the money on deposit in a named bank. If the issue of fraud were answered in favor of

defendants, they would be entitled to all interest in the real estate and personal property.

An issue was submitted to and answered by the jury as follows:

"1. Was the deed dated March 17, 1953 from Thurman Lee and wife, Ada Lee, to Jeff Parker, Thurman Lee and David Wheeler, trustees for the Missionary Advent Conference, Inc., and Thurman Lee, Atlas Blackmon and Edgar McLamb, Trustees for the Lee's Union Missionary Advent Church, procured by fraud and misrepresentation as it relates to the trustees of the Missionary Conference of America, Inc.?

"Answer: Yes."

From judgment entered on the verdict in favor of defendants, plaintiffs appealed.

*Vaughan S. Winborne for plaintiff appellants.*

*Corbett & Corbett by Albert A. Corbett, Jr., and Grady & Shaw by C. G. Grady for defendant appellees.*

BRITT, Judge.

Plaintiffs assign as error the denial of their motions for directed verdict, contending that the evidence of fraud was not sufficient to be submitted to the jury.

A study of North Carolina cases fails to disclose that our courts have adopted a precise definition of fraud. In *Vail v. Vail,* 233 N.C. 109, 113, 63 S.E. 2d 202, 205 (1951), we find:

"Fraud has no all-embracing definition. Because of the multifarious means by which human ingenuity is able to devise means to gain advantages by false suggestions and concealment of the truth, and in order that each case may be determined on its own facts, it has been wisely stated 'that fraud is better left undefined,' lest, as *Lord Hardwicke* put it, 'the craft of men should find a way of committing fraud which might escape a rule or definition.' *Furst v. Merritt,* 190 N.C. 397 (p. 404), 130 S.E. 40. However, in general terms fraud may be said to embrace 'all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the

taking of undue or unconscientious advantage of another.' 37 C.J.S., Fraud, Section 1, p. 204.

"These essential facts must appear in order to establish actionable fraud: '(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party.' *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5."

There are numerous statements with respect to the essential elements of actionable fraud but there appears to be no set standard as the case cited above indicates. It appears that in most of the cases the court has decided that there is fraud and has tailored a definition to the particular facts of the case. Probably the best statement, and the one in general use throughout the nation, is found in *Johnson v. Owens,* 263 N.C. 754, 140 S.E. 2d 311 (1965), where it is said that fraud requires a definite and specific representation which is materially false, the making of the representation with knowledge of its falsity or in culpable ignorance of its truth and with fraudulent intent, and reasonable reliance on the representation by the other party to his deception and damage. 4 Strong, N. C. Index 2d, Fraud, § 1, p. 43 (1968), gives this definition and at footnote 3 cites numerous other cases which provide similar definitions.

A somewhat similar, but at the same time markedly different, statement as to the essential elements of fraud is set forth by Justice Ervin in *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131 (1953), as follows:

"(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation, and acted upon it; and (6) that plaintiff thereby suffered injury."

Quoted with approval in *Auto Supply Co., Inc. v. Equipment Co., Inc.,* 2 N.C. App. 531, 539, 163 S.E. 2d 510, 515 (1968).

The definition stated in *Cofield* differs from that stated in *Johnson* in that it does not explicitly, though it may implicity, require an intent to deceive.

. The evidence applicable to the issue of fraud in this case can be summarized as follows: A faction of the Stone Creek Church decided to form a separate church and needed land upon which to build a sanctuary. Mr. and Mrs. Lee offered to donate a lot upon which the sanctuary could be built. At that time Ingle, who was a minister of a church in Raleigh, was serving as minister of the new congregation and volunteered to have a deed for the land prepared. Since the Lees had the utmost confidence in Ingle's guidance, having known him favorably for some time and he was their minister, the Lees were willing for Ingle to do this but with the understanding that their local church, now named Lee's Union Church, would always own the land. This understanding arose because Lee's Union Church had joined Ingle's church in Raleigh in forming the conference. Ingle told the Lees that he had trouble with conferences in the past and that "they always wanted to own what you had" but that if they would give a lot, he would see to it that the deed was drawn in such a way that their local church would always own the property. Ingle then had the instrument prepared and the Lees met him at the courthouse in Smithfield for purpose of signing the deed and having it recorded. At that time Ingle told the Lees that he had the deed drawn in such a way that "it was safe" and that the local church would hold the property. Mr. Lee was illiterate except for being able to read and write his name and Mrs. Lee did not understand legal terms.

Viewing the evidence in the light most favorable to the non-movant as the test for denying a directed verdict requires, there is evidence by Mrs. Lee that Ingle made a representation regarding the deed. There is also evidence that the representation was false as it clearly differs from the deed. The representation is obviously material in view of the statement by Mrs. Lee that the only way she would sign the deed would be for it to provide that only the local church would hold the property. The statement made at the courthouse as to the nature of the deed related to an existing fact. Even if the statement was made without knowledge that it was false, then there was recklessness as Ingle can be said to have been under a duty to have the instrument drafted as he said that he would and to determine that it was drafted as promised. The Lees relied upon this statement in signing the deed and the stipulation to turn the case on the issue

of fraud should vitiate the requirement of injury to the complainants.

Perhaps the most difficult element for the defendants here is the element of intent. We conclude from a review of the decided cases that intent usually is not shown by direct evidence but generally is proven by circumstances; therefore, it is for the court to decide if there is sufficient evidence in the case from which the jury can draw the inference of intent to deceive. Oftentimes the intent can be shown by presenting evidence of some motive on the part of the perpetrator. While in this case Ingle did not stand to gain directly by defrauding the Lees, his church organization did stand to so gain. We think there was sufficient evidence to raise, for jury consideration, an inference of intent to deceive.

Assuming, *arguendo,* that there was not enough evidence of direct fraud to go to the jury, the question then arises as to whether there was sufficient evidence to go to the jury on constructive fraud.

In *Rhodes v. Jones,* 232 N.C. 547, 548, 61 S.E. 2d 725, 726 (1950), we find: " 'Constructive fraud often exists where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take advantage of, or exercise undue influence over the other. A course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.' 23 A.J. 764; *McNeill v. McNeill,* 223 N.C. 178, 25 S.E. 2d 615."

In *McNeill, supra* at 181, 25 S.E. 2d at 617 (1943), it is stated, "Wigmore puts it this way: 'Where the grantee or other beneficiary of a deed or will is a person who has maintained intimate relations with the grantor or testator, or has drafted, or advised the terms of the instrument, a presumption of undue influence or of fraud on the part of the beneficiary has often been applied.' Evidence (3rd Ed.), sec. 2503, and cases cited in note."

No strict definition exists for "fiduciary relation," but *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931), says, ". . . [I]t exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests

of the one reposing confidence." In this case it can be safely said that Ingle was such a person and it is clear from the evidence that the Lees did so trust him.

In the case of constructive fraud the court is not faced with determining if there is evidence of a fraudulent intent since by the relation of the parties such an intent is presumed. *Miller v. Bank*, 234 N.C. 309, 67 S.E. 2d 362 (1951).

Plaintiffs strenuously argue that the testimony of Mr. Lee that "Mr. Ingle didn't represent to me anything" negatives any fraud on the part of Ingle. Plaintiffs' argument might have validity if the only fraud asserted pertained to Mr. Lee but that is not the case. The question at trial was whether fraud—actual or constructive—had been practiced on the church. Mrs. Lee was a member of the church and although her testimony conflicted with that of Mr. Lee, it was for the jury to resolve the conflicts.

We hold that the evidence was sufficient to go to the jury on the issue submitted.

We have carefully considered the other assignments of error brought forward and argued in plaintiffs' brief but find them to be without merit.

No error.

Judges PARKER and VAUGHN concur.