Seraph Garrison, LLC v. Garrison, 2014 NCBC 28.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
11 CVS 14182

SERAPH GARRISON, LLC,
derivatively on behalf of GARRISON
ENTERPRISES, INC.,

          Plaintiff,

v.

CAMERON GARRISON,

          Defendant,

v.

GARRISON ENTERPRISES, INC.,

          Nominal Defendant.

**ORDER AND FINAL JUDGMENT**

*Hamilton Stephens Steele & Martin, PLLC by Erik M. Rosenwood and Adam Horner, and Bryan Cave LLP by Nicole Jennings Wade and Luke Lantta for Plaintiff.*

*Cameron Garrison, pro se.*

Murphy, Judge.

{1}    **THIS MATTER** came before the Court for trial without a jury on June 9, 2014, to resolve claims and counterclaims asserted by Plaintiff Seraph Garrison, LLC ("Plaintiff"), derivatively on behalf of Garrison Enterprises, Inc. ("GEI") and Defendant Cameron Garrison ("Defendant"). The parties' various claims all relate to the exercise and execution of Defendant's rights and duties as Chief Executive Officer ("CEO") of GEI. Having considered the evidence presented at trial, the Plaintiff's pre-trial brief, and the arguments and contentions of Plaintiff's counsel, the Court finds, concludes, and orders as follows:

# I.
## PRELIMINARY MATTERS

{2}    Counsel for Defendant, Adam Hocutt ("Hocutt") of Dozier, Miller, Pollard, & Murphy, LLP ("Dozier firm") first notified the court by email on March 15, 2013, that Defendant had serious medical issues that would prevent Defendant from participating in a trial.  Throughout the remaining months of 2013, Hocutt periodically updated the Court about Defendant's medical condition.  On November 25, 2013, Hocutt informed the Court that he had lost contact with his client and had been unable to re-establish contact with him.  Following a case management conference ("CMC") on December 18, 2013, the Court entered an Order giving Hocutt until January 27, 2014 to contact Defendant and report his condition and readiness for trial.  *Seraph Garrison v. Garrison*, No. 11 CVS 14182 (N.C. Super Ct. Dec. 18, 2013) (setting deadline for Defendant's counsel to contact Defendant).

{3}    The Court reconvened the CMC on January 27, 2014, at which time Hocutt represented to the Court that after sending mail via the U. S. Postal Service and emails to all known addresses he had for Defendant, and attempting to call Defendant at all available telephone numbers known to Hocutt, he was still unable to make contact with Defendant.  Hocutt consulted with the North Carolina State Bar about how he should proceed under the circumstances and, based upon the advice he received from the State Bar, determined that withdrawal as counsel for Defendant was proper.  Thereafter, the Dozier firm filed a Motion to Withdraw as Counsel for Defendant (the "Motion to Withdraw") on February 4, 2014.  In the Motion to Withdraw, Hocutt recited that he and the Dozier firm had undertaken reasonable measures to communicate with and locate Defendant, and had previously informed Defendant of the firm's intent to withdraw as his legal counsel.

{4}    On February 27, 2014, the Court published notice of pre-trial conference scheduled for June 2, 2014 at 2:00 P.M. and notice of trial scheduled for June 9, 2014 at 10:00 A.M., both to be held in Courtroom 6370 of the Mecklenburg County Courthouse.  Additionally, the Court entered a Pre-Trial Order on March 3, 2014, addressing matters related to final pre-trial preparation.  *Seraph Garrison v.*

*Garrison*, No. 11 CVS 14182 (N.C. Super. Ct. Mar. 3, 2014) (addressing matters related to final pre-trial preparation).

{5}     On June 2, 2014, the Court conducted an in-person pre-trial conference to consider Hocutt and the Dozier firm's Motion to Withdraw and to address any pre-trial matters. Defendant did not personally appear at the pre-trial conference. Hocutt represented that he had again attempted to contact Defendant at all known numbers and email addresses. The Court proceeded to grant Defense Counsel's Motion to Withdraw and entered a written Order to that effect. In the Order, the Court also directed Plaintiff to attempt to serve Defendant with copies of Plaintiff's Pre-Trial Memorandum. By email dated June 4, 2014, Plaintiff's counsel, Erik M. Rosenwood of Hamilton Stephens Steele & Martin, PLLC ("Hamilton Stephens"), notified the Court that he had attempted to serve Plaintiff's Pre-Trial Memorandum on Defendant via all addresses that Hocutt provided for Defendant.

{6}     Defendant did not personally appear in the Courtroom on June 9, 2014, when this matter came on for trial; no legal counsel appeared on behalf of Defendant and no one made contact with the Court on his behalf. However, counsel for Plaintiff was present and ready to proceed. As of 10:00 A.M. on June 9, 2014, the Court's information was that there had been no bankruptcy filings on behalf of Defendant. Given the representations made previously by Defendant's former counsel, the Court found that Plaintiff was present and ready for trial and Defendant was not.

{7}     Although Defendant requested a jury trial in his Answer to the Complaint, he waived that right when he did not appear for trial after notice. N.C.G.S. § 1A-1, Rules 38(d), 39(a); *Frissell v. Frissell*, 47 N.C. App. 149, 153, 266 S.E.2d 866, 868 (1980); *Morris v. Asby*, 48 N.C. App. 694, 696, 269 S.E.2d 729, 731 (1980). Also, Plaintiff waived its right to jury trial. After making appropriate findings of fact and conclusions of law on the record, the Court proceeded with trial without a jury.

## II.
## PROCEDURAL HISTORY

{8}    Plaintiff filed its Verified Complaint on July 22, 2011 in Mecklenburg County, North Carolina, alleging derivative claims for breach of fiduciary duty, fraud, unfair and deceptive trade practices, unjust enrichment, resulting trust, constructive trust, and punitive damages on behalf of GEI.

{9}    This case was designated a mandatory complex business case on July 25, 2011 and subsequently assigned to this Court on July 27, 2011.

{10}    After multiple extensions of time to answer or otherwise reply to the Complaint, Defendant filed his Answer and Counterclaims/Crossclaims on November 23, 2011.  GEI made an appearance and filed its Answer to Defendant's Counterclaims/Crossclaims on February 22, 2012.

## III.
## FINDINGS OF FACT
## A.
## JURISDICTION

{11}    This Court has jurisdiction over the parties and the subject matter of this action; neither party contests personal or subject matter jurisdiction.

## B.
## THE PARTIES

{12}    GEI is a North Carolina corporation that provides health inspection software for businesses and government agencies.

{13}    Plaintiff is a shareholder of GEI and has been a shareholder since May 1, 2007.

{14}    Plaintiff fairly and adequately represents the interests of GEI in this litigation.

{15}    As President and CEO of GEI, and a member of its Board of Directors (the "Board") until December 31, 2010, Defendant received annual compensation of $240,000 from GEI until September 2010 when his compensation was reduced to

$120,000 a year. In addition to his yearly compensation, Defendant received a $26,000 car allowance in 2010.

{16} Defendant employed several of his family members in various capacities at GEI, including his father, Mark Garrison. As an employee of GEI, Mark Garrison received an annual salary of more than $120,000 plus benefits between 2008 and 2011.

{17} As an officer of GEI with discretionary authority, Defendant was subject to the standards of conduct for officers under N.C.G.S. § 55-8-42 (2012).

{18} Defendant was effectively removed as President and CEO of the company in December 2010 and was replaced by Rahul Saxena ("Saxena"), GEI's former Chief Operating Officer ("COO").

{19} On December 20, 2010, Plaintiff made written demand upon GEI to take appropriate action for Defendant's alleged acts and omissions as set forth in the Complaint. Although GEI terminated Defendant's employment for cause, it refused to seek to recover losses that may have been suffered by GEI as a result of Defendant's actions.

C.

NON-PAYMENT OF PAYROLL TAXES

{20} In his role as President and CEO, it was incumbent upon Defendant to ensure that all required tax payments on behalf of GEI were made to the United States Department of Revenue and the North Carolina Department of Revenue. However, beginning in 2008, Defendant failed to remit payroll taxes for GEI, creating an increasing State and Federal tax liability for GEI until the fourth quarter of 2010.

{21} The Board was made aware that Defendant had stopped paying GEI's payroll taxes in 2009.

{22} Defendant's failure to remit GEI's payroll taxes resulted in an assessment of interest and penalties, and as of September 30, 2010, the tax balance due was $1,697,275.98.

{23}  However, the balance of tax assessments began to decline during the fourth quarter of 2010 when Saxena became CEO of GEI. As of December 31, 2012, the amount due was reported as $1,123,875.75. Moreover, GEI was able to negotiate with the Internal Revenue Service ("IRS") to pay less than was originally owed.

## D.
## NON-PAYMENT OF 401(k) CONTRIBUTIONS

{24}  Defendant also tasked himself with payment of contributions to GEI's 401(k) Plan. However, Defendant did not make contributions to the Plan from 2008 until the end of 2010, resulting in disgruntled employees, repayment of lost earnings totaling $15,000.00, and the filing of a lawsuit against GEI by the North Carolina Department of Labor. The lawsuit was subsequently resolved.

{25}  Defendant's failure to make 401(k) contributions, compounded by his failure to pay the payroll taxes, caused GEI to have to implement measures to control expenses, including pay cuts and release of employees.

## E.
## THE ECOLAB CONTRACT

{26}  Ecolab is a corporation that sells cleaning supplies to large corporate chains. In 2009, Ecolab sought to enter into a contract with GEI to provide a data feed link to GEI's servers so that corporate franchises could receive digital data of their stores' health code violations.

{27}  GEI's board of directors was aware of contract negotiations between Defendant and Ecolab and expected to approve any contract before it was signed. In July 2009, the Board reviewed a draft of a contract dated July 1, 2009 and understood that it was the version Defendant had entered into with Ecolab.

{28}  In October 2010, during a meeting with Ecolab representatives, the Board discovered that the contract it had reviewed in July 2009 was not the contract Defendant had in fact executed with Ecolab. The executed Ecolab contract was dated August 1, 2009, not July 1, 2009 as the Board previously believed.

{29}   The August 2009 Ecolab contract was substantially different from the July 2009 version.  Specifically, the July 2009 contract contained a provision that granted GEI and Ecolab equal rights of contract termination after ten years and required Ecolab to pay $2,550,000.00 in exclusivity fees to GEI.  On the other hand, the executed August 2009 contract required GEI to terminate its preexisting contracts with third parties, obligated Ecolab for only $1,300,000.00 in exclusivity fees, and granted only Ecolab the right to terminate the contract after ten years.  Given the reduction in exclusivity fees, forced termination of pre-existing contracts, and unilateral contract termination rights, the August 2009 contract was financially detrimental to the company.

{30}   Ecolab paid $1,000,000.00 to GEI in August 2009.  Instead of using the $1,000,000.00 payment to reduce GEI's payroll tax obligation and 401(k) contribution deficit, Defendant used the money to repay himself for a loan he made to GEI and to pay his car allowance, salary, and the salaries other employees of GEI.

F.

EXPERT OPINION ON DAMAGES

{31}   Plaintiff called Paul Saltzman ("Saltzman") as its sole expert witness. Saltzman was tendered and received as a CPA and expert in business valuation, income tax, and accounting.  Saltzman conducted an analysis of GEI's damages in this case utilizing financial records including general ledgers, contracts, and profit and loss statements provided by Saxena.  Based upon his investigation and analysis, Saltzman prepared a Summary of Damages Incurred by GEI. (Pl. Ex. 5). In Saltzman's opinion, Plaintiff sustained the following losses:

      a. $1,250,328.00 from the misrepresentation of the Ecolab Contract.  This loss was premised upon differences between the July 2009 version of the Ecolab contract and the August 2009 executed Ecolab contract, specifically the clauses regarding the annual exclusivity fee and termination of preexisting contracts.

b. $124,451.00 from payments to Defendant based upon Defendant's decision to pay himself for loans he made to GEI instead of paying tax and 401(k) liabilities with the $1,000,000.00 payment from Ecolab.

c. $252,206.00 of expenses incurred by GEI on behalf of Defendant for items such as a Lexus vehicle that was not used for business purposes, automobile allowances, sporting event seats, gym memberships, and clothing allowances, etc. However, Saltzman noted that there were no expenses for sporting event seats in the general ledger after August 31, 2008. Saltzman also attributed this loss to overpayment of Defendant's father's salary as an employee of GEI.

d. $332,296.00 of lost revenue due to GEI's inability to perform sales orders because of lack of resources caused by Defendant's actions.

e. $510,531.00 related to GEI's loss of value attributable to its financial condition, operating losses sustained prior to 2010, and the August 2009 Ecolab contract. Specifically, Saltzman based this number on the value of GEI based on proposals and expressions of interest in acquiring GEI minus the total liabilities of GEI as of December 31, 2010. However, Saltzman testified that the $6,000,000.00 figure he used to represent expressions of interest was just one number of several and was not the lowest number he could have used in this calculation. Saltzman considered three numbers closest to the date of the Ecolab contract and chose the middle number of the three.

f. $672,985.00 paid to Defendant that would be attributable to Plaintiff's claims for unjust enrichment and constructive trust.

g. $0 related to Defendant's non-payment of payroll taxes and planned 401(k) contributions because details of the specific penalties and interest payments were not available at the time of Saltzman's analysis. Also, Saltzman noted his exclusion of payroll tax liabilities was due in part to GEI's ability to negotiate with the IRS to pay less than its total liability.

h. $409,368.00 in attorney's fees and expert fees incurred in bringing this action against Defendant.

TOTAL LOSSES: $3,541,165.00.

{32} The Court takes issue with Saltzman's calculations of GEI's loss of value, the damages attributable to Plaintiff's claims for unjust enrichment and constructive trust, and the expenses incurred by GEI. Specifically, Saltzman's use of $6,000,000.00 in his calculation of loss of value appears to be based on convenience and very little methodology. There were other figures he could have used to represent expressions of interest in purchasing GEI that were close to the timing of the Ecolab contract, including one number lower than the one he selected. Saltzman affirmatively opted not to use an average value. It appears to the Court that Saltzman simply chose a convenient number to base his loss of value calculation on, which the Court finds unpersuasive.

{33} Regarding Saltzman's analysis of losses suffered related to Plaintiff's claims for unjust enrichment and constructive trust, he provides no methodology or explanation for the $672,985.00 figure he represented in his analysis. In his Summary of Damages Incurred by GEI, Saltzman merely states that "[t]he claims for Unjust Enrichment and Constructive Trust will be presented separately but represent additional damages sought and have been added in the schedule above." (Pl. Ex. 5). As Saltzman never presented evidence on the claims for unjust enrichment and constructive trust, the Court does not find his analysis persuasive on this point.

{34} Furthermore, although Saltzman testified that Saxena informed him that Mark Garrison was a programmer, in his Summary of Damages Incurred by GEI, Saltzman lists Mark Garrison as the Vice President of Communications of GEI. A programmer has arguably different tasks than a vice president of communications. This conflicting evidence calls into doubt Saltzman's characterization of the amount of salary Mark Garrison should have been paid, and therefore, the Court lacks confidence in Saltzman's analysis on this point as well.

{35}   Notwithstanding the foregoing concerns, the Court does not take issue with remaining portions of Saltzman's analysis or his assessment of Plaintiff's damages.

## IV.
## CONCLUSIONS OF LAW
### A.
### BREACH OF FIDUCIARY DUTY

{36}   Under section 55-8-42 of the North Carolina Business Corporation Act, as an officer of GEI with discretionary authority, Defendant was required to discharge his duties: "(1) [i]n good faith; (2) [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) [i]n a manner he reasonably believe[d] to be in the best interest of [GEI]."  N.C.G.S. § 55-8-42 (2013).

{37}   Plaintiff claims that Defendant breached his fiduciary duty to GEI by failing to pay the payroll taxes and planned 401(k) contributions and by misrepresenting to the Board the material terms of the contract he negotiated with Ecolab.  Furthermore, Plaintiff argues that Defendant breached his fiduciary duty by executing a contract that had not been approved by the Board.

{38}   Although a self-imposed duty, it is clear from the evidence in the record that Defendant did not pay GEI's payroll taxes or 401(k) contributions from at least 2008 until his departure from the company in 2010.  However, Plaintiff has failed to present evidence that Defendant's decision not to pay payroll taxes and 401(k) contributions was not in good faith, beneath the standard of care an ordinarily prudent person in a like position would exercise under similar circumstances, or not in a manner Defendant reasonably believed to be in the best interests in the corporation.

{39}   Plaintiff presented an excerpt of Defendant's deposition testimony from January 23, 2013 in which Defendant asserted that instead of paying the IRS during a period when cash-flow was tight, he chose to pay his employees in order to keep the business running.  Even Saxena admitted that corporate expenses were high during that time.  Although Saxena, as CEO, was able to release employees

and cut expenses in order to pay down GEI's tax and 401(k) liabilities, Defendant's choice of a different plan of management may or may not represent good business judgment, but it does not necessarily amount to a breach of his fiduciary duty.

{40} Saxena testified that Defendant told the Board the payroll tax issue was on the bottom of the pile but that he was working with an IRS agent to address the matter. And, there is no evidence that Defendant hid the tax liability from the Board or prevented the Board from intervening to reduce the tax liability if it wished to do so. The evidence that Defendant did not pay payroll taxes and planned 401(k) contributions is uncontested; Defendant admits as much. However, given GEI's cash-crunch, Plaintiff did not present sufficient evidence of a breach of fiduciary duty based on those actions.[1]

{41} Regarding the Ecolab contract, according to Saxena, the Board expected to review the Ecolab contract before it was signed because the Board was concerned about an intellectual property provision in the contract. There is, however, insufficient evidence before the Court to support a finding that Defendant was obligated to seek Board approval before entering into contracts on behalf of GEI. Defendant's inquiry regarding whether a copy of the contract should be circulated for signoff by all Board members was solely an inquiry, and there is no evidence from which the Court could conclude that Defendant's execution of the Ecolab contract without Board approval was a breach of his fiduciary duty.

{42} While there is no evidence in the trial record that Defendant was required to obtain the Board's permission before entering into the Ecolab contract, the evidence demonstrates that Defendant informed the Board about the contract negotiations and sent the Board a copy of the contract to review.

{43} The Board exists to oversee the activities and well-being of GEI. With limited and misleading information, the Board was unable the fully carry out its duties to GEI. As an officer and member of the Board, Defendant had a duty to

---

[1] Although Saltzman testified that payment of payroll taxes and 401(k) contributions should have been a priority for Defendant, the Court notes that Saltzman was tendered and received as an expert in business valuation, income, and accounting and not to provide his opinion on Defendant's business judgment.

provide truthful information to the Board to assist it in carrying out its duties. The Court finds that Defendant did not do so when he purposefully presented the Board with one version of the Ecolab contract when he knew that another, detrimental version had already been executed. By his omission, Defendant mislead the Board.

{44} Accordingly, the Court finds that Defendant's representations to the Board were not made in good faith, and concludes that Defendant breached his fiduciary duty when he purposefully misrepresented the status of the Ecolab contract to the Board.

B.

FRAUD

{45} "While actual fraud has no all-embracing definition, . . . the following essential elements of actual fraud are well established: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (citations omitted). In order to recover under a theory of fraud, Plaintiff must have reasonably relied on Defendant's false representations to its detriment. *Johnson v. Owens*, 263 N.C. 754, 757, 140 S.E.2d 311, 313 (1965).

{46} The facts of this case demonstrate that Defendant's signature appeared on two versions of a contract with Ecolab and that only the August 2009 version had actually been executed. Even though Defendant misrepresented the terms of the contract he sought to enter into with Ecolab, Plaintiff's fraud claim falls short due to the lack of reliance causing detriment.

{47} As previously noted, the Court is unconvinced that Defendant was obligated to seek Board approval before entering into the Ecolab contract. And, even if Defendant were required to seek Board approval, the approval given was for the July 2009 unexecuted contract and not for the August 2009 executed contract. The only step the Board took in reliance on Defendant's misrepresentations was to approve the July 2009 contract, which was never executed. Defendant's representations could not have caused the Board to approve the August 2009

contract because, as Saxena testified, the Board was not aware of its existence until months after it had been executed. Therefore, the Court does not conclude that the Board relied on Defendant's misrepresentation to Plaintiff's detriment such that an award of damages would be proper under Plaintiff's fraud claim.

C.

## UNFAIR AND DECEPTIVE TRADE PRACTICES

{48} To prevail on a claim for unfair and deceptive practices under section 75-1.1 of the North Carolina General Statutes, Plaintiff must demonstrate the existence of three factors: "(1) an unfair and deceptive act or practice . . . (2) in or affecting commerce, and (3) which proximately caused actual injury to [Plaintiff] or [its] business." *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996) (citations omitted).

{49} The North Carolina General Assembly did not intend for the Act to apply to the internal conduct of a single business. *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010). "Thus, any unfair or deceptive practices occurring in the conduct of extraordinary events of, or solely related to the internal operations of, a business will not give rise to a claim under the Act." *Id.* at 52, 691 S.E.2d at 679 (citation omitted). The Act "was designed to achieve fairness in dealings between individual market participants." *Id.*

{50} While the evidence shows that Defendant's fraudulent actions involved a contract with a third-party, Ecolab, the conduct was solely within a single business. Although Plaintiff cites *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248 (2000), for the proposition that allegations of fraud and breach of fiduciary duty may be the basis of a UDTP claim, *Norman* is distinguishable from this case. In *Norman*, the plaintiffs sued shareholders and officers of the corporation who had allegedly "divert[ed] assets and business opportunities from the [c]ompany" to their individual and separately owned businesses. *Id.* at 408, 537 S.E.2d at 260. Although the defendants were shareholders of the company, they competed with the company using outside entities. The facts of the case before the Court are materially different.

{51}   There are no allegations or evidence that Defendant competed with GEI using any of his outside businesses.  Any unfair conduct perpetrated against GEI and its shareholders was accomplished by Defendant through GEI and GEI alone. The Court concludes that the accusations against Defendant concern the internal conduct of a single business and do not fall within the purview Chapter 75's prohibition against unfair and deceptive trade practices.

D.

UNJUST ENRICHMENT, RESULTING TRUST, AND CONSTRUCTIVE TRUST

{52}   To recover under a theory of unjust enrichment, Plaintiff must prove that property or benefits were conferred on Defendant "under circumstances which give rise to a legal or equitable obligation on the part of [D]efendant to account for the benefits received, but . . . [D]efendant has failed to make restitution for the property or benefits."  *Norman*, 140 N.C. App. at 417, 537 S.E.2d at 266 (citation omitted).

{53}   "A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust."  *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530, 723 S.E.2d 744, 751 (2012) (citation omitted).  Plaintiff must prove that Defendant holds legal title to property that "in any way against equity and good conscience" he should not.  *Upchurch v. Upchurch*, 122 N.C. App. 172, 175, 468 S.E.2d 61, 63 (1996).

{54}   A resulting trust is one "'arising from the presumed intent of the parties at the time title is taken by one party under facts and circumstances showing that the beneficial interest in the real [or personal] property is in another.'"  *Id.*

{55}   Plaintiff bases its claims of unjust enrichment, resulting trust, and constructive trust on allegations that Defendant paid himself and received benefits such as a car allowance at a point when he was not paying payroll taxes or 401(k) contributions.  Further, Plaintiff alleges that Defendant received benefits from the execution of the August 2009 contract with Ecolab.  The Court reaffirms that

Plaintiff has failed to present evidence to support a conclusion that Defendant breached his fiduciary duty to GEI by failing to pay the payroll taxes and 401(k) contributions. Moreover, accepting Saxena's testimony as true, the only direct benefit Defendant received from the Ecolab contract and $1,000,000.00 exclusivity fee was payment of his salary. The Court is not convinced that by entering into a bad business deal, Defendant forfeited his right to earn and be paid a salary and car allowance.

{56} Furthermore, even if Defendant did repay a loan he made to GEI in accordance with Saltzman's testimony, there is insufficient evidence to prove he was not entitled to such repayment.

{57} Therefore, the Court concludes there are no grounds upon which to premise a resulting or constructive trust based on Plaintiff's theory of unjust enrichment.

E.

DAMAGES

1.

COMPENSATORY

{58} Based on the evidence presented, the Court cannot find that Plaintiff was injured by Defendant's breach of fiduciary duty by misrepresenting the terms of the Ecolab contract. Having determined that Defendant was not required to seek Board approval before entering into a contract on behalf of Ecolab, and the August 2009 contract had already been executed by the time Defendant presented the July 2009 contract to the Board, it was not Defendant's misrepresentation to the Board that caused damage to GEI. Rather, it was his signing of the August 2009 contract that created the problem for the company, but such was not a breach of his fiduciary duty.

{59} As this is the only actionable portion of all Plaintiff's claims, the Court concludes that Plaintiff is entitled to no compensatory damages from Defendant.

2.

PUNITIVE

{60} Under section 1D-15 of the North Carolina General Statutes, "[p]unitive damages may be awarded only if [Plaintiff] proves [Defendant] is liable for compensatory damages" and that Defendant committed fraud, malice, or willful or wanton conduct. N.C.G.S. § 1D-15 (2014).

{61} As Plaintiff has failed to prove Defendant is liable for compensatory damages, there is no basis for the Court to award Plaintiff punitive damages.

F.

DEFENDANT'S COUNTERCLAIMS/CROSSCLAIMS

{62} In open court, Plaintiff moved for dismissal of Defendant's counterclaims/crossclaims for money owed, breach of contract, quantum meruit, unjust enrichment, and indemnification of corporate officer/director based on a lack of evidence to support Defendant's counterclaims/crossclaims. The Court found that Defendant had presented no evidence in support of his claims for relief and, as such, concluded that Defendant was not entitled to relief. N.C.G.S. § 1A-1, Rule 41(b) (2014).

{63} Therefore, the Court reiterates its finding of fact and conclusion of law and DISMISSES Defendant's counterclaims/crossclaims with prejudice.

V.

CONCLUSION

{64} The Court has both personal and subject matter jurisdiction over the parties and claims, respectively.

{65} Defendant did not attend trial and presented no evidence in support of his counterclaims/crossclaims and is, therefore, not entitled to relief on those claims.

{66} Plaintiff's claims for unjust enrichment, resulting trust, and constructive trust are without merit.

{67} Plaintiff has failed to sustain its burden of proof with respect to its claim for fraud.

{68} With respect to its UDTP claim, the relationship between Plaintiff and Defendant constitutes a single-market participant and, therefore, the actions of Defendant are not "in or affecting commerce" and cannot sustain a UDTP claim.

{69} With respect to its claim for breach of fiduciary duty, Plaintiff did not present sufficient evidence that Defendant's decisions to not pay GEI's payroll taxes and planned 401(k) contributions and his execution of the August 2009 Ecolab contract were not in good faith and beneath the standard of care an ordinarily prudent person in a like position would exercise under similar circumstances, or that Defendant did not reasonably believe those actions were in the best interests of the corporation.

{70} Furthermore, although Plaintiff provided evidence that Defendant's misrepresentations to the Board regarding the July 2009 unexecuted version of the Ecolab contract were not in good faith and, therefore, constituted a breach of Defendant's fiduciary duty, Plaintiff has failed to prove by a preponderance of the evidence that those misrepresentations actually caused GEI harm and justify an award of compensatory damages on that claim.

{71} As Plaintiff has failed to prove that Defendant is liable for compensatory damages, Plaintiff cannot succeed on a claim for punitive damages.

{72} Because Plaintiff has not succeeded on its claim for UDTP, it is not entitled to treble damages or attorney's fees.

VI.

JUDGMENT

**IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED** as follows:

{73} Plaintiff is not entitled to relief on its claim for breach of fiduciary duty.

{74} Plaintiff is not entitled to relief on its claim for fraud.

{75} Plaintiff is not entitled to relief on its claim for UDTP.

{76} Plaintiff is not entitled to relief on its claim for unjust enrichment.

{77} Plaintiff is not entitled to relief on its claim for resulting trust.

{78} Plaintiff is not entitled to relief on its claim for constructive trust.

{79} Plaintiff is not entitled to relief on its claim for punitive damages.

{80}   Defendant's counterclaims/crossclaims for money owed, breach of contract, quantum meruit, unjust enrichment, and indemnification of corporate officer/director against GEI are **DISMISSED** with prejudice.

{81}   Each party, respectively, shall bear its/his own costs of this action.

**SO ORDERED**, this the 26th day of June, 2014.