LAMARR GARLAND FORBIS, Co-Executor of the Estate of Bonnie S. Newell; and LAMARR GARLAND FORBIS, Executrix of the Estate of Augusta Lee Sustare (formerly Attorney-in-Fact for Augusta Lee Sustare) v. BEVERLY LEE NEAL

No. 79PA06

(Filed 24 August 2007)

**1. Statutes of Limitation and Repose— fraud—attorney-in-fact and executor**

The statute of limitations was not a proper basis for summary judgment in an action for fraud by an attorney-in-fact and executor. Ordinarily, a jury must decide when fraud should have been discovered in the exercise of reasonable diligence under the circumstances, but a lack of diligence may be excused when the fraud is allegedly committed by the superior party in a confidential or fiduciary relationship. Here, the forecast of evidence was too inconclusive to resolve the issue as a matter of law.

FORBIS v. NEAL

[361 N.C. 519 (2007)]

**2. Evidence— Dead Man's Statute—affidavit—summary judgment—court presumed to disregard inadmissible statements**

The trial court did not err in a summary judgment proceeding on a complaint alleging fraud by an executor by considering an affidavit which contained statements from the deceased. It is assumed that the trial court properly disregarded any averments which would have violated N.C.G.S. § 8C-1, Rule 601(c) (the Dead Man's Statute) if admitted in a later trial.

**3. Fraud— attorney-in-fact and executor—transfer of assets—issue of fact as to intent of deceased**

The trial court erred by granting summary judgment for defendant on a claim for fraud where defendant was the attorney-in-fact for his aunt and then her executor, and certain transactions involving a joint account resulted in his acquiring some of her assets. Whether these transactions accorded with his aunt's wishes is a question of fact for a jury.

**4. Fraud— attorney-in-fact—transfer of property to new accounts—signature of principal**

Summary judgment was correctly granted for defendant on fraud claims arising from the opening of certain accounts for an aunt for whom he served as attorney-in-fact where his aunt signed the signature cards for the accounts. Plaintiffs did not forecast evidence to indicate that defendant forged the signatures or caused them to be forged.

**5. Fraud— constructive—attorney-in-fact—property passing outside principal's estate**

Summary judgment should not have been granted for defendant on a claim for constructive fraud against defendant for establishing certain accounts for an aunt for whom he served as an attorney-in-fact which resulted in a portion of her property passing to him outside of her will. There was a genuine issue of material fact as to whether defendant's fiduciary relationship with his aunt led to and surrounded the consummation of the transactions.

Justice Hudson did not participate in the consideration or decision of this case.

On writ of certiorari, pursuant to N.C.G.S. § 7A-32(b), to review a decision of a divided panel of the Court of Appeals, 175 N.C. App. 455,

**FORBIS v. NEAL**

[361 N.C. 519 (2007)]

624 S.E.2d 387 (2006), affirming an order entered by Judge David S. Cayer on 5 August 2004 in Superior Court, Mecklenburg County. On 6 April 2006, the Supreme Court allowed plaintiffs' petition for discretionary review as to additional issues. Heard in the Supreme Court 20 November 2006.

*Eugene C. Hicks, III for plaintiff-appellants.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by James F. Wood, III, for defendant-appellee.*

MARTIN, Justice.

This case arises from a dispute over the assets of Bonnie Sustare Newell (Newell) and her sister Augusta Lee Sustare (Sustare). LaMarr Garland Forbis, Newell and Sustare's niece, brought a fraud action on behalf of her aunts' estates against Beverly Lee Neal (defendant), her first cousin and the nephew of Newell and Sustare. The trial court granted summary judgment for defendant, and the Court of Appeals affirmed. We affirm in part, reverse in part, and remand with instructions.

During the 1990s, Newell and Sustare resided in an assisted living facility in Matthews, North Carolina. Sustare had spent her working years as a hair stylist, and Newell had worked at various jobs in insurance and real estate. When they entered the assisted living facility, neither sister had been a member of the workforce for approximately twenty years. Their nephew, defendant, was a licensed real estate broker who held a bachelor's degree from the University of Georgia and a Masters of Business Administration degree from the University of Utah.

On 5 November 1991, both sisters executed powers of attorney designating defendant as their attorney-in-fact. The powers of attorney authorized defendant to act for each sister with respect to real and personal property transactions, banking, taxes, and similar transactions. Neither power of attorney, however, authorized defendant to make gifts of the sisters' assets to himself or anyone else.

In December 1995, Newell and Sustare executed wills, leaving most of their respective estates to each other by means of residuary clauses. Secondary residual provisions, which were designed to activate upon the death of the last surviving sister (as between Newell and Sustare), left any remaining assets to various nephews and nieces, including defendant and Forbis.

FORBIS v. NEAL

[361 N.C. 519 (2007)]

On 19 June 1996, Newell personally executed two signature cards with Branch Banking and Trust (BB&T). The first card, which she alone signed, created a payable-on-death account (the POD account) and designated defendant as the beneficiary. The other card, which both Newell and defendant signed, created a joint account with right of survivorship (the ROS account). At the time, BB&T accepted the signature cards as authentic and established the corresponding accounts.

On 26 June 1998, defendant and Newell set up a joint Paine Webber account with right of survivorship. In his capacity as attorney-in-fact, defendant signed the Paine Webber account application on Newell's behalf, listing her as the primary account holder and himself as a joint account holder. The Paine Webber account application does not bear any signature purporting to belong to Newell. Defendant stated during the course of discovery that Newell "opted to create the Paine Webber account because it ha[d] a significantly better rate of return than she could receive at BB&T, there was no penalty for early withdrawal, and it facilitated the incremental sale of her . . . stock, if needed." Over the course of several years, defendant sold tracts of Newell's real property and deposited funds into the Paine Webber account.

Defendant also established a second system of accounts for managing Sustare's assets. Although Sustare's system of accounts was similar to Newell's system, it is undisputed that Sustare signed all the relevant documents.

Newell died on 19 December 1999, just before her ninety-first birthday. Her death certificate listed "Dementia of [the] Alzheimer's type" as an underlying cause of death. Upon Newell's death, defendant received $70,000.00 as the sole beneficiary of the POD account. He also became the sole account holder of the Paine Webber account, which contained stock and other assets valued at $175,204.00, and the ROS account, worth $1,963.73. In total, defendant received $247,167.73 in cash and stock as a result of Newell's death, all of which passed to him outside of her will.

On 14 February 2000, defendant and Forbis qualified as co-executors of the Newell estate. They filed an inventory of the estate on 8 May 2000. After various personal items, cash, and other specific bequests were distributed in accordance with Newell's will, Sustare received, through the residuary clause, cash in the amount of $5,828.70, a promissory note valued at $165,000.00, and real prop-

erty interests. A final accounting of the Newell estate was filed on 15 February 2001, and the estate was closed.

After her sister's death, Sustare lived alone at the assisted living facility, and her own funds eventually ran short. At that time, Sustare and other family members requested that defendant provide assistance to help ease Sustare's financial difficulties. Defendant refused.

By March 2001, Sustare had cancelled all the accounts she held jointly with defendant or which listed defendant as a beneficiary. By October 2002, she had also revoked the power of attorney that named defendant as her attorney-in-fact and appointed Forbis as her new attorney-in-fact. On 17 December 2002 Forbis reopened Newell's estate, and the Clerk of Superior Court re-issued letters testamentary, reinstating Forbis and defendant as co-executors.

Forbis, on behalf of the Newell estate, and Sustare[1] (collectively, plaintiffs) instituted the present action against defendant on 18 December 2002, alleging fraud and related claims. Following discovery, all parties filed motions for summary judgment. After a hearing, the trial court entered an order granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment.

Plaintiffs appealed, and the Court of Appeals affirmed the trial court in a divided opinion. *Forbis v. Neal*, 175 N.C. App. 455, 624 S.E.2d 387 (2006). Judge Steelman wrote separately, agreeing that summary judgment in favor of defendant was appropriate as to the POD and ROS accounts. *Id.* at 459, 624 S.E.2d at 390 (Steelman, J., concurring in part and dissenting in part). He disagreed, however, with the majority's conclusion that defendant was entitled to summary judgment as to the Paine Webber account. *Id.* at 462, 624 S.E.2d at 392 (Steelman, J., concurring in part and dissenting in part).

Plaintiffs filed a notice of appeal in this Court based on the dissenting opinion and a petition for discretionary review of additional issues. The Court treated the notice of appeal, which was untimely, as a petition for writ of certiorari and allowed it. The Court also allowed plaintiffs' petition for discretionary review of additional issues not addressed in the dissenting opinion.

The instant case presents cross-motions for summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

1. Sustare died while this matter was pending in the Court of Appeals, and Forbis proceeded as Sustare's executor.

the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). Moreover, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (internal quotation marks omitted). The standard of review for summary judgment is de novo. *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

[1] At the outset, we address defendant's contention that the statute of limitations bars plaintiffs' action. N.C.G.S. § 1-52(9) provides that actions for "relief on the ground of fraud or mistake" must be brought within three years. N.C.G.S. § 1-52(9) (2005). Defendant contends that the three-year period began to run when the alleged wrong was complete—that is, on the dates the various accounts were opened. In support of his contention, defendant relies on *Davis v. Wrenn*, 121 N.C. App. 156, 158-59, 464 S.E.2d 708, 710-11 (1995), which held that the statutory limitations period begins to run when the fraud occurs, regardless of when the aggrieved party actually becomes aware of the fraudulent conduct. Plaintiffs argue, on the other hand, that the three-year period did not begin to run until Newell's death.

N.C.G.S. § 1-52(9) states unequivocally that, in actions for fraud, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." We have previously construed this provision to "set accrual at the time of discovery *regardless* of the length of time between the fraudulent act or mistake and plaintiff's discovery of it." *Feibus & Co. v. Godley Constr. Co.*, 301 N.C. 294, 304, 271 S.E.2d 385, 392 (1980). To the extent Court of Appeals cases such as *Davis* conflict with this Court's decision in *Feibus*, they are overruled.

For purposes of N.C.G.S. § 1-52(9), "discovery" means either actual discovery or when the fraud should have been discovered in the exercise of "reasonable diligence under the circumstances." *Bennett v. Anson Bank & Trust Co.*, 265 N.C. 148, 154, 143 S.E.2d 312, 317 (1965) (emphasis omitted). Ordinarily, a jury must decide when fraud should have been discovered in the exercise of reasonable diligence under the circumstances. This is particularly true when the evidence is inconclusive or conflicting. *Feibus*, 301 N.C. at 304-05,

**FORBIS v. NEAL**

[361 N.C. 519 (2007)]

271 S.E.2d at 392; *Lowery v. Wilson*, 214 N.C. 800, 805-06, 200 S.E. 861, 865 (1939).

When, as here, the fraud is allegedly committed by the superior party to a confidential or fiduciary relationship, the aggrieved party's lack of reasonable diligence may be excused. *See, e.g., Bennett*, 265 N.C. at 156, 143 S.E.2d at 318 (involving a defendant who allegedly defrauded the heirs of his business partner who was also his brother); *Vail v. Vail*, 233 N.C. 109, 116-17, 63 S.E.2d 202, 207-08 (1951) (involving a defendant who allegedly defrauded his mother); *Small v. Dorsett*, 223 N.C. 754, 760-62, 28 S.E.2d 514, 517-18 (1944) (involving a banker who allegedly defrauded his customer, a long time friend and widow with no business experience). This principle of leniency does not apply, however, when an event occurs to "excite [the aggrieved party's] suspicion or put her on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud." *Vail*, 233 N.C. at 117, 63 S.E.2d at 208.

Here, the statute of limitations began to run when Newell or her estate discovered or should have discovered the alleged fraud. As in *Feibus*, the forecast of evidence in the present case was too inconclusive for the trial court to resolve this issue as a matter of law. The statute of limitations was therefore not a proper basis for summary judgment.

Another procedural argument advanced by defendant to defeat plaintiffs' action arises from provisions of Chapter 28A of the General Statutes pertaining to estate administration. Specifically, defendant alleges that Forbis, on behalf of the Newell estate, is unable to assert a fraud claim against defendant without his consent. Forbis remains capable of maintaining the instant action as the sole executor of the Sustare estate even if the Newell estate were to be eliminated as a party plaintiff. In any event, our disposition of the present appeal sends this case back to the trial court for further proceedings, without prejudice to defendant's right to assert any procedural arguments under Chapter 28A. Accordingly, we decline—as did the Court of Appeals—to address this argument.

[2] We next address plaintiffs' challenge to an affidavit that defendant presented in support of his motion for summary judgment. They contend the trial court erred by considering this affidavit because it describes, among other things, statements made by Newell and Sustare. Such statements, they argue, are barred by N.C. R. Evid. 601(c), the so-called "Dead Man's Statute," which provides that

"[u]pon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person . . . concerning any oral communication between the witness and the deceased person . . . ." This Court previously described the reasoning behind Rule 601(c) as follows:

> "Death having closed the mouth of one of the parties, (with respect to a personal transaction or communication) it is but meet that the law should not permit the other to speak of those matters which are forbidden by the statute. Men quite often understand and interpret personal transactions and communications differently, at best; and the Legislature, in its wisdom, has declared that an *ex parte* statement of such matters shall not be received in evidence."

*In re Will of Lamparter*, 348 N.C. 45, 49, 497 S.E.2d 692, 694 (1998) (parentheses added by Court) (quoting *Sherrill v. Wilhelm*, 182 N.C. 673, 675, 110 S.E. 95, 96 (1921)).

In the instant case, plaintiffs' contention that the trial court erred by allegedly considering the challenged affidavit is without merit. North Carolina Rule of Civil Procedure 56(e) provides that, at summary judgment, affidavits "shall set forth such facts as would be admissible in evidence." N.C. R. Civ. P. 56(e). To the extent the challenged affidavit contains averments which would violate Rule 601(c) if admitted as evidence at a later trial, we assume the trial court properly disregarded them.

We now turn to plaintiffs' substantive claims. Although the original complaint alleged various causes of action including fraud, undue influence, and breach of fiduciary duty, plaintiffs did not brief the undue influence and breach of fiduciary duty claims before this Court and thereby abandoned them. *See* N.C. R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). Accordingly, our analysis narrows to whether summary judgment was proper on plaintiffs' fraud claims.

[3] Fraud may be actual or constructive. *Watts v. Cumberland County Hosp. Sys., Inc.*, 317 N.C. 110, 115, 343 S.E.2d 879, 883 (1986). While actual fraud "has no all-embracing definition," the following essential elements of actual fraud are well established: "(1) False rep-

resentation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Additionally, any reliance on the allegedly false representations must be reasonable. *Johnson v. Owens*, 263 N.C. 754, 757, 140 S.E.2d 311, 313 (1965). The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999); *see also Johnson*, 263 N.C. at 758, 140 S.E.2d at 314 (observing that "[j]ust where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine.").

As to the Paine Webber account, defendant stated that he and Newell created the account because it had a better rate of return than a regular bank account, it carried no penalties for early withdrawal, and it enabled Newell to liquidate her stock incrementally. Defendant's right of survivorship in Newell's Paine Webber account, however, was not necessary to accomplish these stated goals. Moreover, Newell did not sign the Paine Webber account application, and defendant's power of attorney did not confer upon him the authority to make gifts of Newell's assets, including joint ownership of an account, to himself or anyone else. Despite the limitations on his power of attorney, defendant purported to sign the Paine Webber account application on Newell's behalf giving every appearance that he was carrying out her wishes. He then sold real estate titled exclusively in Newell's name and deposited the proceeds into the Paine Webber account. Through this process, he became joint owner of a significant portion of Newell's assets.

Whether this series of transactions accorded with Newell's wishes is a question of fact which must be decided by a jury. Genuine issues of material fact exist as to whether defendant's signature on the Paine Webber application was a "false representation or concealment of a material fact," *Ragsdale*, 286 N.C. at 138, 209 S.E.2d at 500, namely, the "material fact" that his power of attorney did not actually authorize him to open this joint account with right of survivorship on Newell's behalf. It follows that similar issues exist as to the other elements of actual fraud: Whether defendant's signature was "reasonably calculated to deceive" and "made with intent to deceive"; whether it did "in fact deceive," *id.*; and whether reliance upon it was

reasonable, *Johnson*, 263 N.C. at 757, 140 S.E.2d at 313. Plaintiffs have also forecasted sufficient evidence to survive summary judgment as to damages, since Newell's will reveals that Sustare would have received the contents of the Paine Webber account through the residuary clause in the event that the account had passed as part of the Newell estate. Accordingly, the Court of Appeals erred by affirming the trial court's grant of summary judgment as to the actual fraud claim on the Paine Webber account.

[4] As to the POD and ROS accounts, the trial court properly granted summary judgment in favor of defendant on the actual fraud claim. Unlike the Paine Webber account application, Newell signed the BB&T signature cards for these two accounts. Put simply, plaintiffs did not forecast any evidence to indicate that defendant forged the signatures or caused them to be forged. In the absence of such evidence, there is no false representation or concealment of a material fact to support a claim that defendant engaged in actual fraud in setting up the two accounts. Moreover, without any forecast of an evidentiary link between defendant and the alleged forgeries, plaintiffs have not adequately forecasted evidence of defendant's mental state, such as whether the alleged forgery was reasonably calculated to deceive or made with intent to deceive. For these reasons, no genuine issue of material fact exists on the issue of whether defendant committed actual fraud in setting up the POD and ROS accounts. Accordingly, summary judgment in defendant's favor was proper as to the actual fraud claims in connection with the POD and ROS accounts.

[5] Although summary judgment on the actual fraud claim was appropriate for the POD and ROS accounts and inappropriate for the Paine Webber account, it remains for us to evaluate the propriety of summary judgment on the constructive fraud claim as to all three bank accounts. "A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981). Rather, this cause of action "arises where a confidential or fiduciary relationship exists," *Watts*, 317 N.C. at 115, 343 S.E.2d at 884, which has " 'led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). Thus, "[c]onstructive fraud differs from actual fraud in that 'it is based on a confidential relationship

rather than a specific misrepresentation.' " *Id.* (quoting *Terry*, 302 N.C. at 85, 273 S.E.2d at 678-79). Another difference is that intent to deceive is not an element of constructive fraud. *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971).

When, as here, the superior party obtains a possible benefit through the alleged abuse of the confidential or fiduciary relationship, the aggrieved party is entitled to a presumption that constructive fraud occurred. *Watts*, 317 N.C. at 116, 343 S.E.2d at 884; *McNeill v. McNeill*, 223 N.C. 178, 181, 25 S.E.2d 615, 617 (1943). "This presumption arises 'not so much because [the fiduciary] has committed a fraud, but [because] he may have done so.' " *Watts*, 317 N.C. at 116, 343 S.E.2d at 884 (alterations in original) (quoting *Atkins v. Withers*, 94 N.C. 431, 433, 94 N.C. 581, 590 (1886)). Once the presumption arises, the alleged fiduciary "may rebut the presumption by showing, for example, that the confidence reposed in him was not abused." *Id.* (internal quotation marks omitted); *see also Lee v. Pearce*, 68 N.C. 63, 66, 68 N.C. 76, 81 (1873) (stating that the presumption may "be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted").

In *Watts v. Cumberland County Hospital System, Inc.*, for example, this Court held that the alleged fiduciaries—in that case the plaintiff's doctors—were able to successfully rebut the plaintiff's presumption of constructive fraud because they proved, and the plaintiff admitted, that she had obtained "numerous second opinions from several other specialists" regarding the matters that were the subject of the allegedly fraudulent transaction. 317 N.C. at 116, 343 S.E.2d at 884.

Here, it is undisputed that defendant and Newell were in a fiduciary relationship created by the power of attorney vested in defendant. Plaintiffs forecasted evidence that all three bank accounts were established at defendant's initiative. They also forecasted evidence that the Newell estate, Sustare, and later the Sustare estate were damaged by the fact that a large portion of Newell's assets passed to defendant outside her will.

In opposition to plaintiffs' forecast of evidence, defendant filed a six-page affidavit in which he claimed that Newell had full knowledge of all his financial activities on her behalf and that she understood defendant would receive the contents of the three accounts upon her death.

This forecasted evidence raised genuine issues of material fact as to whether defendant committed constructive fraud in relation to the three accounts. Unlike in *Watts*, a genuine issue of material fact exists as to whether defendant's fiduciary relationship with Newell "led up to and surrounded the consummation" of the transactions that effectively transferred most of her assets to him. This issue must be decided by a jury.

Because plaintiffs alleged that defendant obtained a benefit as a result of his abuse of the fiduciary relationship, plaintiffs were entitled to the legal presumption described in *Watts*. Unlike the defendant in *Watts*, however, defendant here did not rebut that presumption. *Watts* involved substantially different forecasts of evidence than the instant case. The *Watts* plaintiff alleged she had been defrauded by her doctors as she evaluated treatment options, but admitted herself that she had obtained numerous second opinions before undertaking the course of action from which she alleged the defendants had fraudulently benefitted. *Id.*; *see also* 37 Am. Jur. 2d *Fraud and Deceit* § 472, at 457 (2001) (noting that a plaintiff's procurement of "competent and independent advice" is a "significant factor" in determining whether a defendant has rebutted the presumption). The instant case, by contrast, involves a fiduciary who allegedly divested the beneficiaries of almost all their assets. Nothing in plaintiffs' forecast of evidence indicates the presence of other factors, such as an independent advisor, which might tend to mitigate the impact of the alleged fraud.

After a careful review of the record, we conclude plaintiffs demonstrated that genuine issues of material fact exist as to whether defendant perpetrated a constructive fraud in setting up and maintaining Newell's Paine Webber, ROS, and POD accounts. The Court of Appeals therefore erred in affirming the trial court's grant of summary judgment on these claims.

We conclude summary judgment was properly granted for defendant with respect to actual fraud on the ROS and POD accounts. Defendant was not entitled to summary judgment, however, as to the actual fraud claim on the Paine Webber account. Moreover, summary judgment was improper as to plaintiffs' constructive fraud claims on all three accounts.

We therefore remand to the Court of Appeals for further remand to the trial court with instructions to proceed on the following issues: (1) the claim of actual fraud as to the Paine Webber account, and (2)

**HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[361 N.C. 531 (2007)]

the claims of constructive fraud as to the Paine Webber, ROS, and POD accounts.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

Justice HUDSON did not participate in the consideration or decision of this case.