McCULLOUGH, Judge.
 

 *2
 
 Charles M. Gurganus ("defendant") appeals from summary judgment orders entered in favor of Mary N. Gurganus ("plaintiff") concerning the termination of alimony, plaintiff's share of defendant's military retirement
 
 *813
 
 benefits, and maintenance of a Survivor Benefit Plan ("SBP") to the benefit of plaintiff. For the following reasons, we affirm.
 

 I.
 
 Background
 

 Plaintiff and defendant were married on 1 April 1978. On 15 March 2001, plaintiff filed a complaint in Onslow County District Court seeking a divorce from bed and board on grounds of adultery, constructive abandonment, alcohol abuse, and other indignities to render plaintiff's condition intolerable and life burdensome. Along with the divorce from bed and board, plaintiff sought alimony, custody of their minor child, child support, possession of the marital residence, attorneys fees, post separation support, and equitable distribution.
 

 On 2 May 2001, the trial court entered a temporary order requiring "defendant ... to pay to plaintiff as postseparation and as support for the minor daughter, the sum of $3,500.00 per month...." The temporary order was entered
 
 nunc pro tunc
 
 to the hearing date, 27 April 2001.
 

 Defendant filed an answer and counterclaim on 29 May 2001, in which defendant denied the allegations asserted as the bases of plaintiff's claim for divorce from bed and board. Defendant also asserted his own claims for a divorce from bed and board and equitable distribution, while seeking to avoid paying alimony and attorneys fees. Plaintiff submitted a reply on 22 June 2001.
 

 The matter came on for hearing during the 10 September 2001 term of Onslow County District Court. Judgment was entered on 5 April 2002,
 
 nunc pro tunc
 
 10 September 2001. That judgment granted plaintiff a divorce from bed and board from defendant, ordered defendant to pay alimony to plaintiff, and equitably distributed the marital property with an unequal distribution to the benefit of plaintiff. As part of the equitable distribution, plaintiff was to receive a percentage of defendant's military retirement benefits, including amounts to be paid under defendant's SBP. An additional order concerning defendant's SBP coverage was entered with the consent of the parties on 8 April 2003.
 

 Following a 31 July 2003 hearing on the court's own Rule 60(a) motion, an order was entered on 8 August 2003,
 
 nunc pro tunc
 
 31 July 2003, to correct a clerical mistake in the 5 April 2002 judgment.
 

 *3
 
 Years later after defendant retired from the military, on 7 July 2014, defendant filed a motion in the cause asserting three claims. First, defendant sought termination or reduction of alimony because plaintiff would be receiving a percentage of his military retirement benefits. Second, defendant sought a declaratory judgment regarding use of the "Seifert Formula" in the 5 April 2002 judgment to calculate plaintiff's allotment of defendant's military retirement benefits contending that plaintiff should not benefit from his rise in the military ranks and the corresponding increase in his retirement benefits that was attained due to his active efforts postseparation. Third, defendant sought to have the expense of the SBP assigned to plaintiff.
 

 On 23 September 2014, defendant filed a motion to amend his motion in the cause to add a fourth claim, that his active efforts to rise in the military ranks and improve his income and plaintiff's actions against him to impede his advancement "constitutes a material and substantial change in circumstances warranting a modification of the [judgment] pursuant to the case of
 
 White v. White
 
 ,
 
 152 N.C.App. 588
 
 ,
 
 568 S.E.2d 283
 
 (N.C. Ct. App. 2002), aff'd,
 
 357 N.C. 153
 
 ,
 
 579 S.E.2d 248
 
 (2003)." Discovery then ensued.
 

 On 1 April 2015, plaintiff filed a motion for summary judgment on grounds that
 
 res judicata
 
 barred reconsideration of plaintiff's share of defendant's retirement benefits and defendant's SBP coverage. Plaintiff's summary judgment motion came on for hearing in Onslow County District Court before the Honorable William M. Cameron III on 19 August 2015. On 3 September 2015, the court entered three separate orders granting summary judgment in favor of plaintiff on each of the three claims asserted in defendant's 7 July 2014 motion in the cause. The court determined there was no basis in the law for granting defendant's motion in the cause; therefore, plaintiff was entitled to a percentage of defendant's retirement benefits as calculated
 
 *814
 
 in the 5 April 2002 judgment and defendant was responsible for the SBP premium as set forth in the 8 April 2003 order.
 

 Defendant filed notice of appeal from each of the three summary judgment orders on 22 September 2015.
 

 II.
 
 Discussion
 

 On appeal, defendant argues the trial court erred in entering summary judgment because genuine issues of material fact exist as to whether purposeful acts by both parties amount to a substantial change in circumstances that warrants modification of the 5 April 2002 judgment. Defendant also asserts that the equitable distribution in the 5 April 2002 judgment is invalid because the trial court lacked subject matter jurisdiction. We address these issues in reverse order.
 

 *4
 
 1.
 
 Jurisdiction
 

 For the first time in the long history of this case, defendant now challenges the court's jurisdiction to enter the equitable distribution portion of the 5 April 2002 judgment. While it is clear that this is the first time the trial court's subject matter jurisdiction has been challenged in this case, our law is equally clear that issues challenging subject matter jurisdiction may be raised at any time, even for the first time on appeal.
 
 See
 

 Lemmerman v. A.T. Williams Oil Co.
 
 ,
 
 318 N.C. 577
 
 , 580,
 
 350 S.E.2d 83
 
 , 85 (1986) ("The question of subject matter jurisdiction may be raised at any time, even in the Supreme Court."). Thus, the issue is properly before this Court.
 

 "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal."
 
 McKoy v. McKoy
 
 ,
 
 202 N.C.App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010). "Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute."
 
 Harris v. Pembaur
 
 ,
 
 84 N.C.App. 666
 
 , 667,
 
 353 S.E.2d 673
 
 , 675 (1987). Regarding equitable distribution,
 
 N.C. Gen. Stat. § 50-21
 
 (a) provides, in pertinent part, that:
 

 [a]t any time after a husband and wife begin to live separate and apart from each other, a claim for equitable distribution may be filed and adjudicated, either as a separate civil action, or together with any other action brought pursuant to Chapter 50 of the General Statutes, or as a motion in the cause as provided by G.S. 50-11(e) or (f).
 

 N.C. Gen. Stat. § 50-21
 
 (a) (2015).
 

 As detailed above, in this case plaintiff filed a complaint for divorce from bed and board on 15 March 2001 and defendant responded by filing an answer and counterclaim for a divorce from bed and board on 29 May 2001. In those pleadings, both plaintiff and defendant prayed that the court equitably distribute the marital property unequally in their respective favors. Yet, there is no separation date alleged in those pleadings. The first mention of a separation date in the record is in the 2 May 2001 temporary support order, in which the court found that plaintiff and defendant "lived together as husband and wife until on or about March 22, 2001 when the defendant began to move his personal clothing and items from the marital residence." The court then found, again, that the parties separated on approximately 22 March 2001 in the 5 April 2002 judgment.
 

 Both parties agree that, under
 
 N.C. Gen. Stat. § 50-21
 
 (a), the separation of the parties provides the court with subject matter jurisdiction to
 
 *5
 
 adjudicate a claim for equitable distribution. But defendant claims the court lacked jurisdiction to enter the equitable distribution portion of the judgment in this case because neither party alleged a separation date in their pleadings. Defendant also claims that neither plaintiff nor his pleadings contained a proper claim for equitable distribution because it was only mentioned in the prayers for relief and, in both pleadings, was paired with a claim for divorce from bed and board, indicating the parties had not separated. We disagree with both of defendant's arguments.
 

 We first note that this Court has held that "a pleading requesting the court to enter an order distributing the parties' assets in an equitable manner is sufficient to state a claim for equitable distribution."
 
 Coleman v. Coleman
 
 ,
 
 182 N.C.App. 25
 
 , 28,
 
 641 S.E.2d 332
 
 , 336 (2007) (citing
 
 Hunt v. Hunt
 
 ,
 
 117 N.C.App. 280
 
 ,
 
 450 S.E.2d 558
 
 (1994) ). Thus, the prayers for relief in both pleadings put
 
 *815
 
 the parties on notice that both sought equitable distribution and those requests were sufficient to state a claim for equitable distribution. Moreover, the mere fact that the equitable distribution claims were asserted alongside claims for a divorce from bed and board does not defeat the equitable distribution claims. Defendant has cited no authority for his assertion that such claims are improper together and we have found no such authority. In fact, a review of cases shows that claims for a divorce from bed and board and equitable distribution are often paired together in pleadings.
 

 Concerning the required separation of the parties as a prerequisite for jurisdiction to adjudicate an equitable distribution claim, there is no indication in the record that the parties were separated at the time plaintiff filed her complaint. The record does show, however, that the parties separated on or about 22 March 2001, before defendant filed his answer and counterclaim. Defendant also alleges in his answer and counterclaim that he commuted weekly to North Carolina from where he was stationed in Virginia to visit plaintiff and their children until it became clear that reconciliation was impossible, then defendant stopped making weekly trips. Therefore, regardless of whether the parties were separated at the time plaintiff filed the complaint, the record is clear that the parties were separated by the time defendant asserted his claim for equitable distribution. Therefore the trial court did have subject matter jurisdiction to equitably distribute the marital property.
 

 2.
 
 Summary Judgment
 

 Defendant also challenges the trial court's grant of summary judgment in favor of plaintiff on the claims in his 7 July 2014 motion in the cause. Specifically defendant contends the trial court erred in entering
 
 *6
 
 summary judgment with respect to his claims to alter the plaintiff's share of his military retirement benefits and to terminate alimony. We disagree in both instances.
 

 "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 A.
 
 Retirement Benefits
 

 Concerning the division of defendant's military retirement benefits for purposes of equitable distribution, the Court has previously addressed the permissible methods of division in
 
 Seifert v. Seifert
 
 ,
 
 319 N.C. 367
 
 ,
 
 354 S.E.2d 506
 
 (1987). In that case, the issue before the Court was "whether the trial court erred in deferring, until actual receipt, an anticipated award of military pension and retirement benefits calculated under a present value valuation method."
 
 Id
 
 . at 367,
 
 354 S.E.2d at 507
 
 . In deciding that the court did err, the Court concluded that "both present value and fixed percentage are permissible methods of evaluating pension and retirement benefits in arriving at an equitable distribution of marital property."
 
 Id
 
 . at 371,
 
 354 S.E.2d at 509
 
 . The Court further explained the fixed percentage method as follows:
 

 Under this method if, after valuing the marital estate, the court finds a distributive award of retirement benefits necessary to achieve an equitable distribution, the nonemployee spouse is awarded a percentage of each pension check based on the total portion of benefits attributable to the marriage. The portion of benefits attributable to the marriage is calculated by multiplying the net pension benefits by a fraction, the numerator of which is the period of the employee spouse's participation in the plan during the marriage (from the date of marriage until the date of separation) and the denominator of which is the total period of participation in the plan. The nonemployee spouse receives this award only if and when the employee spouse begins to receive the benefits.
 

 Under the fixed percentage method, deferral of payment is possible without unfairly reducing the value of the award. The present value of the pension or retirement benefits is not considered in determining the percentage to which the
 
 *7
 
 nonemployee spouse is entitled. Moreover, because the
 
 *816
 
 nonemployee spouse receives a percentage of the benefits actually paid to the employee spouse, the nonemployee spouse shares in any growth in the benefits. Yet, the formula gives the nonemployee spouse a percentage only of those benefits attributable to the period of the marriage, and that spouse does not share in benefits based on contributions made after the date of separation.
 

 Finally, so long as the trial court properly ascertains the net value of the pension and retirement benefits to determine what division of the property will be equitable, application of the fixed percentage method does not ... violate the mandate that the court must identify the marital property, ascertain its net value, and then equitably distribute it. On the contrary, valuation of these benefits, together with other marital property, is necessary to determine the percentage of these benefits that the nonemployee spouse is equitably entitled to receive.
 

 Id
 
 . at 370-71,
 
 354 S.E.2d at 509
 
 (internal citations omitted). Subsequent to
 
 Seifert
 
 , the Court's analysis was codified in
 
 N.C. Gen. Stat. § 50-20.1
 
 .
 

 In this case, the court used the fixed percentage method to determine the portion of defendant's military retirement benefits to allocate to plaintiff. The Court provided the following formula in the 5 April 2002 judgment: (23 years / total years of defendant's service) x 50% = % to be paid to the plaintiff.
 

 On appeal, defendant recognizes that
 
 Seifert
 
 controls the division of military retirement benefits in North Carolina. Yet, defendant claims that he "raises a novel question of law regarding the application of
 
 Seifert
 
 to pension division and whether there should be a narrow set of circumstance that allow modification of an equitable distribution order if the failure to do so results in manifest unfairness...." Defendant further claims "[t]he instant case is an example of how while the fixed percentage method does not unfairly reduce a non-employee spouse's award, it does, at times, unfairly
 
 inflate
 
 the amount received by the non-employee spouse and results in a grossly different valuation than the present value method of valuation." Thus, defendant requests that this Court consider a different method of valuation based on changes in circumstances. Those changes in circumstances are alleged acts by plaintiff to thwart defendant's advancement in the military and defendant's active efforts to advance his military career.
 

 *8
 
 Upon review, we are not convinced that the equitable distribution portion of the judgment should be altered due to the alleged changes in circumstances. Although defendant admits that the law favors finality of equitable distribution judgments, defendant relies on this Court's decision in
 
 White v. White
 
 ,
 
 152 N.C.App. 588
 
 ,
 
 568 S.E.2d 283
 
 (2002),
 
 aff'd per curiam
 
 ,
 
 357 N.C. 153
 
 ,
 
 579 S.E.2d 248
 
 (2003), to argue that this Court has allowed modification of orders based on changes of circumstances in the past.
 

 Upon the parties divorce in
 
 White
 
 , a consent order was entered incorporating an agreement by the parties for the distribution of the marital property, including that defendant was entitled to one-half of the plaintiff's pension accumulated during the marriage.
 
 Id
 
 . at 590,
 
 568 S.E.2d at 284
 
 . Years later, after the plaintiff retired and defendant began receiving benefits from plaintiff's pension, plaintiff applied for and began receiving disability benefits, which in turn caused the amount of benefits classified as retired pay to decrease and resulted in a significant decrease in the amount of benefits available to defendant.
 
 Id
 
 . at 590-91,
 
 568 S.E.2d at 284
 
 . As this Court explained, "[i]n short, [the] plaintiff unilaterally acted so as to diminish [the] defendant's share of [the] plaintiff's monthly benefits while simultaneously maintaining his own monthly benefits, as well as increasing his after-tax income."
 
 Id
 
 . at 591,
 
 568 S.E.2d at 284
 
 . As a result, the defendant filed a motion in the cause seeking a modified or amended qualifying order increasing her percentage of plaintiffs' retired pay.
 
 Id
 
 . at 591,
 
 568 S.E.2d at 284
 
 . On appeal of the denial of her motion, this Court held the trial court erred.
 
 Id
 
 . at 592,
 
 568 S.E.2d at 285
 
 .
 

 Upon review of
 
 White
 
 , we agree with plaintiff's assertion that
 
 White
 
 is distinguishable from the present case. In
 
 White
 
 , this Court allowed modification where the plaintiff
 
 *817
 
 had, subsequent to the equitable distribution order, elected to receive disability benefits in place of retired pay and, thereby, diminished the benefits to be received by the defendant. In that instance, modification was allowed to enforce the intent of the original equitable distribution order. In the present case, defendant attempts to modify plaintiff's allocation of his military retirement benefits because those benefits have increased post-separation as a result of his continued military service; which was foreseeable at the time the court entered the 5 April 2002 judgment. We hold
 
 White
 
 does not control in this case.
 

 The formula used by the court to calculate the fixed percentage of defendant's military retirement benefits to be awarded to plaintiff is exactly the formula set forth in
 
 Seifert
 
 and
 
 N.C. Gen. Stat. § 50-20.1
 
 (d). We decline defendant's request to consider a new formula and agree
 
 *9
 
 with the trial court that "[t]here is no basis in law for granting [d]efendant's motion or amended motion[;]" therefore, "[p]laintiff is entitled to a share of the [d]efendant's military retired pay as stated in the April 5, 2002 judgment...."
 

 B.
 
 Alimony
 

 On appeal, defendant also argues the trial court erred in entering summary judgment on his claim to terminate the alimony awarded in the 5 April 2002 judgment. We are not convinced the order sought by defendant is necessary.
 

 The pertinent decretal portions of the judgment required defendant to pay $2,500.00 per month to plaintiff as alimony and provided for the reduction of alimony payments as follows:
 

 Further, at such time as plaintiff begins to receive her portion of the defendant's military retirement pay, the defendant may reduce the amount of alimony he pays by the actual sum received by the plaintiff from the military retirement pay such that the plaintiff receives a total of $2,500.00 per month.
 

 Defendant asserts, and the record shows, that the amount of defendant's retirement pay received by plaintiff is greater than the alimony ordered in the judgment. Therefore, under the terms of the judgment, and without further order of the court, defendant is entitled to reduce the alimony paid to zero. Because defendant is no longer required to pay any alimony under the terms of the judgment, an additional order terminating alimony would be of no consequence. Thus, we hold the trial court did not err in entering summary judgment.
 

 III.
 
 Conclusion
 

 For the reasons discussed above, we hold the trial court had jurisdiction to equitably distribute the marital property in the 5 April 2002 judgment and did not later err in granting summary judgment in favor of plaintiff on the claims asserted in defendant's 7 July 2014 motion in the cause. The trial court's orders are affirmed.
 

 AFFIRMED.
 

 Judges HUNTER, Jr., and DIETZ concur.