BRYANT, Judge.
 

 *583
 
 Where plaintiffs did not demonstrate genuine issues of material fact, the trial court did not err in granting summary judgment.
 

 *546
 
 Plaintiffs Sam Lambert and Andria Lambert filed an action against defendants Sally Morris and Steve Hair alleging conversion, civil conspiracy, unfair and deceptive trade practices, and intentional or reckless infliction of emotional distress. Plaintiffs also sought injunctive relief and damages related to the disappearance of their dog, Biscuit.
 

 On 16 August 2015, Biscuit went missing from plaintiffs' residence in Stanly County. Plaintiffs attempted to locate Biscuit for several days before initiating contact with Jimmy Medlin of the Montgomery County Animal Control ("Animal Control") on or about 19 August 2015. Plaintiffs informed Medlin that a photograph of Biscuit was posted on Animal Control's unofficial Facebook page and asked if Biscuit was there. Medlin checked their records and told plaintiffs they did not have
 
 *584
 
 a record of Biscuit. Plaintiffs continued to follow up with the unofficial Facebook page periodically for news of Biscuit.
 

 Over a month later, on 2 October 2015, a citizen brought Biscuit to Animal Control where she was placed in one of Animal Control's holding cells located on the Montgomery County Humane Society's ("Humane Society") property. Biscuit did not have a microchip or a collar to identify the owners. Biscuit was held for 72 hours under the possession of Animal Control. After the 72-hour period, on 5 October 2015, Animal Control transferred possession of Biscuit to the Humane Society.
 
 [1]
 
 The Humane Society often takes possession of animals after the 72-hour period and finds available homes for them.
 

 The next day, on 6 October 2015, a volunteer with the Humane Society took Biscuit to a veterinarian for examination and spaying. On 7 October 2015, a picture of Biscuit was posted by the Humane Society on its website where it remained until Biscuit was adopted. Meanwhile, it was discovered that Biscuit had tumors in her mammary glands and on 20 October 2015, she was taken to the Asheboro Animal Hospital to have them surgically removed. Then, on 30 October 2015, defendant Hair formally adopted Biscuit by completing an adoption application with the Humane Society. Defendant Hair reimbursed the Humane Society for some of Biscuit's veterinary bills while in the care of the Humane Society.
 

 Approximately four weeks after Biscuit was adopted, defendant Hair decided to let defendant Morris foster Biscuit because of problems Biscuit was having interacting with defendant Hair's other rescue dogs. Defendant Morris brought Biscuit to the Humane Society about "two to three times a week."
 

 Almost a year later, in June 2016, plaintiffs found an old Facebook posting of Biscuit at the Humane Society and attempted to claim Biscuit. Defendant Hair requested that plaintiffs needed to reimburse him for Biscuit's vet bills while in the care of the Humane Society if he gave Biscuit to them, which plaintiffs agreed.
 

 Defendant Hair requested to speak with plaintiffs' veterinarian, but plaintiffs were unable to reach him. Defendant Hair did not feel comfortable giving Biscuit back to plaintiffs when plaintiffs indicated that they had over fourteen dogs. Defendant Hair stated he would not return Biscuit to plaintiffs before conducting a home visit. The exchange
 
 *585
 
 between plaintiffs and defendant Hair became heated. Defendant Hair eventually ended the meeting and told plaintiffs to leave. Defendant Hair refused to return Biscuit and did not proceed any further with the home inspection.
 

 On 22 July 2016, plaintiffs filed their action against defendants. During negotiations, defendant Hair agreed to return Biscuit to plaintiffs to resolve the lawsuit, however he later declined and the parties proceeded with the action. On 14 August 2017, the action was heard before the Honorable Michael L. Robinson on defendants' motion for summary judgment. Judge Robinson issued a written order granting judgment in favor of defendants and dismissed plaintiffs' claims. Plaintiffs appeal.
 

 *547
 
 On appeal, plaintiffs argue the trial court erred in granting summary judgment in favor of defendants and dismissing plaintiffs' claims for: 1) conversion and permanent injunction; 2) civil conspiracy; 3) unfair and deceptive trade practices; 4) intentional or reckless infliction of emotional distress; and 5) punitive damages. We disagree.
 

 "Our standard of review of an appeal from summary judgment is
 
 de novo
 
 ; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 Rule 56 of the North Carolina Rules of Civil Procedure provides that any party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). "In a motion for summary judgment, the evidence presented to the trial court must be ... viewed in a light most favorable to the non-moving party."
 
 Hart v. Brienza
 
 ,
 
 246 N.C. App. 426
 
 , 430,
 
 784 S.E.2d 211
 
 , 215 (2016) (citations and quotations omitted).
 

 A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim .... If the moving party meets this burden, the non-moving party must in turn either show that a genuine
 
 *586
 
 issue of material fact exists for trial or must provide an excuse for not doing so.
 

 Id
 
 .
 

 North Carolina General Statutes, section 19A-32.1 provides for procedures an animal shelter must follow upon receiving a lost or abandoned animal. N.C. Gen. Stat. § 19A-32.1 (2017). The statute, in pertinent part, states "all animals received by an animal shelter or by an agent of an animal shelter shall be held for a minimum holding period of 72 hours."
 
 Id
 
 . § 19A-32.1(a). "[A] person who comes to an animal shelter [within the minimum holding period] attempting to locate a lost pet is entitled to view every animal held at the shelter, subject to rules providing for such viewing during at least four hours a day, three days a week."
 

 Id.
 

 § 19A-32.1(c).
 

 After the expiration of the minimum holding period, the shelter may (i) direct the agent possessing the animal to return it to the shelter, (ii) allow the agent to adopt the animal consistent with the shelter's adoption policies, or (iii) extend the period of time that the agent holds the animal on behalf of the shelter.
 

 Id
 
 . § 19A-32.1(e).
 

 Plaintiffs allege many causes of action, all of which are based on whether defendant Hair's adoption of Biscuit was properly conducted. In its extensive order granting summary judgment to defendants, the trial court viewed the issue before it as follows: "whether [ ] defendants' evidence that the adoption of [p]laintiffs' lost dog 'Biscuit' was properly conducted pursuant to applicable law has been sufficiently rebutted by [p]laintiffs' evidence to create an issue for jury determination, thus mandating denial of the Motion." The trial court determined that plaintiffs' evidence, challenging defendant Hair's adoption of Biscuit, did not create genuine issues of material fact. As the trial court determined and we agree, Animal Control satisfied its legal duty as Biscuit remained in its custody for the required statutory holding period and was acquired by the Humane Society
 
 only after
 
 the expiration of 72 hours.
 

 By law, it is permissible for Animal Control to euthanize animals after the 72-hour period.
 
 See
 

 id
 
 . § 19A-32.1(a). However, as defendants established, it is also customary for Animal Control to transfer animals to the Humane Society for the purpose of finding new available homes. After the minimum holding period, Animal Control has the legal authority to
 
 either
 
 euthanize
 
 or
 
 transfer possession to initiate adoption. It is
 
 *587
 
 made clear by the statute that after the 72-hour holding period, prior ownership can be legally severed and a formal adoption can begin before euthanasia is considered.
 
 *548
 
 Plaintiffs lost any ownership rights to Biscuit after the first 72 hours Biscuit was in the possession of Animal Control.
 
 [2]
 
 Once the Humane Society received Biscuit and initiated a formal adoption to a third party--in this case, defendant Hair--almost a month had passed since Biscuit was in the possession of Animal Control.
 

 It is undisputed that defendant Hair was the rightful owner of Biscuit, and we agree with the statement of the trial court that "[d]efendant Hair, as the [rightful] owner of [Biscuit], was entitled to negotiate with [p]laintiffs in whatever fashion he desired" in deciding whether to return Biscuit to plaintiffs or keep her and "this conduct was solely as an individual ... not on behalf of the Humane Society." Therefore, defendants have successfully rebutted plaintiffs' allegations of tortious conduct and demonstrated that there exist no genuine issues of material fact.
 

 Accordingly, the trial court did not err in granting summary judgment to defendants and dismissing plaintiffs' claims.
 

 AFFIRMED.
 

 Judges DIETZ and INMAN concur.
 

 [1]
 

 Defendant Morris was the Vice President/Secretary and Treasurer for the Humane Society and Defendant Hair was the President.
 

 [2]
 

 We again note that Biscuit had no identifying chip or collar when she arrived at Animal Control.