IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-972

Filed 20 May 2026

New Hanover County, No. 19CVS001668-640

CAPE HOMEOWNERS ASSOCIATION, INC., DESMOND P. MCHUGH and wife, GERALDINE MCHUGH, MICHAEL L. BODNAR and wife, PATRICIA L. BODNAR, BRUCE ANDERSON and wife, ARLENE ANDERSON, DONNA J. MARTIN and spouse, PETER MARTIN, Plaintiffs,

v.

SOUTHERN DESTINY, LLC, Defendant.

Appeal by Plaintiffs from order entered 27 June 2025 by Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 24 March 2026.

*Shipman Wright & Moore, LLP, by Gary K. Shipman, for Plaintiffs-Appellants.*

*Adams, Howell, Sizemore & Adams, P.A., by Jeremy Jackson and Ryan J. Adams, for Defendant-Appellee.*

COLLINS, Judge.

Plaintiffs appeal from the trial court's order granting summary judgment to Defendant on its claims for easements implied by prior use and by necessity over the private streets of The Cape subdivision. For the reasons stated herein, we affirm.

## I.  Background

The essential facts are undisputed. The Cape is a residential subdivision located in southern New Hanover County. Plaintiffs are The Cape Homeowners

Association, Inc. ("HOA") and individual lot owners within the subdivision. All streets within The Cape are private and owned by the HOA. The HOA is responsible for maintaining the private streets and related common-area infrastructure. Defendant is Southern Destiny, LLC, who wishes to develop the golf course property in the subdivision into a residential development.

**A. Development History**

The Cape was originally developed beginning in 1983 by Carolina Resorts and later by its parent company, Suggs & Harrelson, Inc. (collectively, "the Developers"). The Developers recorded a series of subdivision plats between 1983 and 1986 depicting hundreds of lots and the private street network. Some plats designated certain areas as "FOR FUTURE DEVELOPMENT." The plats also depicted a golf course around which the subdivision was designed. The golf course itself was never included within the subdivision or made subject to the HOA's declarations.

In August 1986, the Developers conveyed the "golf course property" to Midway Partners. By separate deed on that same date, the Developers also conveyed the remaining unsold subdivision property to Midway Partners, including the private streets. Midway Partners thus simultaneously owned the golf course property, the subdivision property, and the subdivision streets in 1986.

In September 1986, Midway Partners conveyed the golf course property to Michael and Gwen Mattie, who immediately conveyed it to Thomas Wright. The Mattie deed included an attempted express easement over The Cape streets, but this

Court later held that easement "patently ambiguous" and void. *Cape Homeowners Ass'n, Inc. v. S. Destiny, LLC*, 284 N.C. App. 237, 247 (2022). The execution of the Mattie deed severed the golf course property title from the streets and other property in The Cape subdivision.

Wright operated the golf course property as "The Cape Golf and Racquet Club" for approximately twenty years. In November 2006, he recorded a boundary survey identifying seven tracts comprising the golf course property ("Tracts 1–7"). The survey shows that none of the private streets lie within the golf course property boundaries.

## B. Southern Destiny's Acquisition and Use

Wright conveyed the golf course property to Defendant in November 2006. The deed did not reference any easements over The Cape streets. Defendant invested in renovations and continued operating the golf course until 2018, when Hurricane Florence caused significant damage and the course was permanently closed.

The parties agree that for decades, The Cape streets were used by golf course owners, employees, guests, and members of the public to access the clubhouse and to move between golf holes located on different tracts.

## C. Proposed Redevelopment

After closing the golf course, Defendant submitted preliminary plans in 2018 to develop portions of Tracts 1, 4, and 5 of the golf course property into a residential subdivision, consisting of at least 152 single-family lots and multiple multi-family

units. The plans contemplate use of The Cape Boulevard, Sedgley Drive, and Lakeview Drive for ingress and egress.

New Hanover County's Technical Review Committee granted preliminary approval subject to a requirement that Defendant record a road-maintenance agreement with the HOA. The County expressly stated that its approval "should not be taken as an indication that New Hanover County believes that the applicant does or does not have a right to use the private streets within The Cape."

## D. Procedural History

Plaintiffs filed this action in May 2019 seeking a declaratory judgment that Defendant had no right to use the private streets for subdivision development. Defendant counterclaimed, asserting various easement theories.

In 2020, the trial court granted summary judgment to Defendant on an express easement theory and dismissed its implied easement claims. This Court reversed on appeal, holding that the express easement was void and reversing the dismissal of the implied easement theories. *Cape Homeowners*, 284 N.C. App. at 249. On remand, the trial court entered a temporary restraining order, preventing Defendant from using the private streets for development access. Both parties again moved for summary judgment.

On 27 June 2025, the trial court granted summary judgment to Defendant on its implied easement claims, concluding:

- Tracts 1, 2, 5, 6, and 7 have easements implied by prior

use over The Cape Boulevard, Sedgley Drive, and East Telfair Drive;

- Tract 3 has an easement implied by prior use over The Cape Boulevard, Sedgley Drive, and Lakeview Drive; and

- Each tract also has an easement by necessity over specified portions of the same streets.

- Tract 4 has neither an easement implied by prior use or by necessity.

The trial court further concluded that Defendant may use these streets "for ingress, egress and regress for the construction and improvement of the property for residential purposes." Plaintiffs timely appealed.

## II.    Discussion

Plaintiffs argue that the trial court erred by denying them summary judgment and granting Defendant summary judgment on Defendant's easement by prior use and easement by necessity claims.

## A. Standard of Review

We review summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Forbis v. Neal*, 361 N.C. 519, 524 (2007). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2025).

## B. Easement Implied by Prior Use

"Even though an easement is not expressly granted in a conveyance, our courts will find the existence of an easement by implication under certain circumstances." *Metts v. Turner*, 149 N.C. App. 844, 849 (2002). An easement implied by prior use is generally established by proof:

> (1) that there was common ownership of the dominant and servient parcels and a transfer which separates that ownership; (2) that, before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was apparent, continuous and permanent; and (3) that the claimed easement is "necessary" to the use and enjoyment of the claimant's land.

*Knott v. Washington Housing Authority*, 70 N.C. App. 95, 98 (1984) (citations omitted).

### 1. Common Ownership and Severance

The parties agree that Midway Partners commonly owned the golf course property, the subdivision property, and the subdivision streets in 1986 and that the execution of the Mattie deed severed the golf course property from the subdivision property and the streets in The Cape subdivision. The first requirement of prior common ownership of the dominant and servient parcels and the subsequent severance of ownership is met. *See id.*

### 2. Apparent, Continuous, and Permanent Use

Plaintiffs admitted that "Midway Partners and its predecessor in title of the [g]olf [c]ourse [p]roperty, its members and guests used the Subdivision Roads for

ingress, egress, and access to various portions of the [g]olf [c]ourse [p]roperty." Plaintiffs further admitted that "Defendant and its predecessors in title have been using the Subdivision Roads for more than twenty (20) years." Plaintiffs averred in their verified complaint, "For the next twenty (20) or so years, the Golf Course operated as 'The Cape Golf and Racquet Club,' a 'semi-private facility offering our members *and the public* 18 holes of championship golf to play.'" (emphasis added).

The record shows the chain of all owners of the golf course property, as well as golf course employees and guests, owners of the subdivided lots, and members of the public have used The Cape streets to access the golf course property prior to and after the 1986 severance of common ownership. The second requirement of Defendant's and others' "apparent, continuous, and permanent" use of The Cape streets to access the golf course property is met. *Id.*

### 3. *Necessary for Use and Enjoyment*

"[T]he element of necessity does not require a showing of absolute necessity." *Id.* "Our Courts have been markedly generous in their definition of what is 'necessary' for the beneficial use of land to satisfy the element of necessity." *Adelman v. Gantt*, 251 N.C. App. 372, 378-79 (2016). It is undisputed that The Cape streets provide the only means of ingress, egress, and access to and from public roads to the golf course property and are necessary for the beneficial use of the land. *See Knott*, 70 N.C. App. at 98. The third requirement "that the claimed easement is 'necessary' to the use and enjoyment" of the golf course property is met. *Id.*

As all three requirements of an easement implied by prior use are established, the trial court did not err by granting Defendant summary judgment on this claim.

### 4. *Overburdening the Easement*

Plaintiffs argue that the scope and extent of any implied easement is limited to access for golfers and golf course maintenance workers and that whether access for construction traffic for hundreds of residential units and access to those units once constructed materially increases the burden on the private streets of The Cape is a fact-intensive question for a jury.

"[A]n easement holder may not increase his use so as to increase the servitude or increase the burden upon the servient tenement." *Hundley v. Michael*, 105 N.C. App. 432, 435 (1992) (citation omitted). "If the easement holder makes an unwarranted use of the land in excess of the easement rights held, such use will constitute an excessive use and may be enjoined." *Id.*

Whether Defendant makes an unwarranted use of The Cape streets in excess of its easement rights such that Defendant's use may be enjoined is not ripe for our determination. *See Z.A. Sneeden's Sons, Inc. v. ZP No. 116, L.L.C.,* 190 N.C. App. 90, 100-01 (2008) (analyzing whether defendant's use of its easement over plaintiff's property overburdened the easement).

In summary, the trial court did not err by granting Defendant summary judgment on its easement implied by prior use claim.

## C. Easement by Necessity

To satisfy the elements of an easement by necessity, the claimant must prove that: "(i) the claimed dominant tract and the claimed subservient tract were once held in common ownership that was severed by a conveyance and (ii) the necessity for the easement arose out of the conveyance." *Whitfield v. Todd*, 116 N.C. App. 335, 339 (1994) (quotation marks and citation omitted). "The necessity must arise at the time of conveyance from the common grantor." *Jernigan v. McLamb*, 192 N.C. App. 523, 527 (2008) (citation omitted).

Here, there is no dispute that the parcels were under common ownership which ended as a result of the golf course property's transfer to the Matties in 1986. Furthermore, as a result of the transfer, the golf course property became landlocked and it became necessary for the golf course property owner to have an easement over The Cape streets for the purposes of ingress, egress, and access to and from the golf course property. The subsequent closure of the golf course and Defendant's development plans cannot create, eliminate, or alter the necessity that existed at severance.

As the severance of the golf course property from the private streets created a necessity for access, the trial court did not err by granting Defendant summary judgment and denying Plaintiffs summary judgment on this claim.

### III. Conclusion

Because Defendant is entitled to summary judgment on its easement implied by prior use and easement by necessity claims, the trial court's order is affirmed.

AFFIRMED.

Judges TYSON and FREEMAN concur.